No. 14-5012
_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

CHARLES B. RANGEL,
*Appellant*,

v.

JOHN A. BOEHNER, et al.,
*Appellees*.

_____

On Appeal from a Final Order of the U.S. District Court for the
District of Columbia (Honorable John D. Bates, U.S. District Judge)
_____

**BRIEF OF APPELLEES**

Kerry W. Kircher, General Counsel
William Pittard, Deputy General Counsel
Todd B. Tatelman, Assistant Counsel
Mary Beth Walker, Assistant Counsel
Eleni M. Roumel, Assistant Counsel
Isaac B. Rosenberg, Assistant Counsel

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
(202) 225-9700

*Counsel for Appellees John A. Boehner, Karen L.
Haas, Zoe Lofgren, Jo Bonner, Michael T.
McCaul, K. Michael Conaway, Charles W. Dent,
and Gregg Harper*

(Additional Counsel listed on inside cover)

John M. Faust, Esq.

LAW OFFICE OF JOHN M. FAUST, PLLC
1325 G Street, N.W., Suite 500
Washington, D.C. 20005
(202) 449-7707

*Counsel for Appellee R. Blake Chisam*


Richard A. Sauber, Esq.

ROBBINS, RUSSELL, ENGLERT, ORSECK,
    UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411L
Washington, D.C. 20006
(202) 775-4506

*Counsel for Appellees C. Morgan Kim and*
*Stacey Sovereign*

June 26, 2014

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), counsel respectfully make the following representations:

### *Parties and Amici in the District Court*

Plaintiff:                                        Status in This Court:

Charles B. Rangel                                 Appellant


Defendants:                                       Status in This Court:

John A. Boehner                                   Appellee

Karen L. Haas                                     Appellee

Zoe Lofgren                                       Appellee

Jo Bonner                                         Appellee

Michael T. McCaul                                 Appellee

K. Michael Conaway                                Appellee

Charles W. Dent                                   Appellee

Gregg Harper                                      Appellee

R. Blake Chisam                                   Appellee

C. Morgan Kim                                     Appellee

Stacey Sovereign                                  Appellee

*Ruling under Review*

Memorandum Opinion and Order, *Rangel v. Boehner, et al.*, No. 1:13-cv-00540 (D.D.C. Dec. 11, 2013) (Joint Appendix ("JA") at 391-439), *reported at* 2013 WL 6487502 (D.D.C. Dec. 11, 2013).

*Related Cases*

None.

/s/ Kerry W. Kircher
Kerry W. Kircher, General Counsel

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
(202) 225-9700

*Counsel for Appellees John A. Boehner, Karen L. Haas, Zoe Lofgren, Jo Bonner, Michael T. McCaul, K. Michael Conaway, Charles W. Dent, and Gregg Harper*

/s/ John M. Faust
John M. Faust, Esq.

LAW OFFICE OF JOHN M. FAUST, PLLC
1325 G Street, N.W., Suite 500
Washington, D.C.  20005
(202) 449-7707

*Counsel for Appellee R. Blake Chisam*

ii

*/s/ Richard A. Sauber*
Richard A. Sauber, Esq.

ROBBINS, RUSSELL, ENGLERT, ORSECK,
     UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411L
Washington, D.C.  20006
(202) 775-4506

*Counsel for Appellees C. Morgan Kim and Stacey*
*Sovereign*

June 26, 2014

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .... i

TABLE OF AUTHORITIES ........................................................................ vii

GLOSSARY ................................................................................................ xvii

JURISDICTIONAL STATEMENT .............................................................. 1

STATEMENT OF ISSUES ........................................................................... 1

PERTINENT AUTHORITIES ...................................................................... 2

STATEMENT OF THE CASE....................................................................... 2

FACTUAL BACKGROUND......................................................................... 7

      I.     Misconduct Allegations Concerning Congressman Rangel......... 7

      II.    Investigative Subcommittee Proceedings. ................................... 7

      III.   Adjudicatory Subcommittee Proceedings. ................................... 9

      IV.   Sanction Hearing. ....................................................................... 12

      V.    House Floor Proceedings on Censure Resolution....................... 12

      VI.   Approval of the Journal............................................................... 13

      VII.  Post-Censure Proceedings and Events. ...................................... 14

      VIII. Congressman Rangel's Committee Service and Electoral
           Successes. .................................................................................. 15

SUMMARY OF ARGUMENT ....................................................................... 16

STANDARD OF REVIEW ............................................................................ 17

ARGUMENT .................................................................................................. 18

I.  Appellees Are Immune from Suit under the Speech or Debate Clause. ...... 18

    A.    Brief Overview of the Speech or Debate Clause ......................... 18

        1.    *History and Purpose of the Clause* .................................... 18

        2.    *Scope of the Clause* ........................................................... 20

        3.    *Protections of the Clause* .................................................... 23

    B.    Appellees Are Immune from Suit Because Congressman Rangel's Claims Are Predicated Entirely on Speech-or-Debate-Protected Conduct .......................................... 24

        1.    *Appellees Chisam, Kim, and Sovereign* ........................... 25

        2.    *Appellees McCaul, Conaway, Dent, and Harper* ............. 26

        3.    *Appellees Lofgren and Bonner* .......................................... 27

        4.    *Appellees Boehner and Haas* ............................................. 28

    C.    Congressman Rangel's Allegations of Appellee Wrongdoing Do Not Vitiate the Protections of the Speech or Debate Clause. ....................................................... 29

II.    Congressman Rangel Lacks Article III Standing. ................................. 32

    A.    Congressman Rangel Has Not Carried His Burden of Establishing an Article III Injury-in-Fact ..................................... 33

    B.    The Congressman Has Not Carried His Burden of Establishing that Appellees Caused Any Injury that Might Be Cognizable for the Purposes of Article III. ..................................................... 37

    C.    The Congressman Has Not Carried His Burden of Establishing that Any Injury that Might Be Cognizable for Purposes of Article III Would Be Redressed by a Favorable Judicial Decision. ....................................................... 39

III.    Congressman Rangel's Suit Presents Non-Justiciable Political
        Questions. ...................................................................................... 41

        A.      The Discipline Clause Authority Is Textually Committed to
                the House Alone. .......................................................... 43

        B.      The Journal Clause Authority Is Textually Committed to
                the House Alone. .......................................................... 46

        C.      Judicial Resolution of Congressman Rangel's Claims Would
                Manifest a Lack of Respect Due a Coordinate Branch of
                the Federal Government. .............................................. 48

CONCLUSION ................................................................................. 54

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES[*]

**Cases**:

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
　526 U.S. 40 (1999) ........................................................................... 36

*ASARCO Inc. v. Kadish*,
　490 U.S. 605 (1989) ......................................................................... 40

*Bain v. MJJ Prods., Inc.*,
　--- F.3d ----, No. 12-7061, 2014 WL 1887370
　(D.C. Cir. May 13, 2014) ................................................................. 32

* *Baker v. Carr*,
　369 U.S. 186 (1962) ...................................... 41, 42, 47, 48, 51, 52

*Boehner v. McDermott*,
　No. 98-cv-0594, slip op. (D.D.C. Aug. 20, 2002) ......................... 20

*Brown v. Hansen*,
　973 F.2d 1118 (3d Cir. 1992) ......................................................... 48

*Brown & Williamson Tobacco Corp. v. Williams*,
　62 F.3d 408 (D.C. Cir. 1995) ......................................................... 23

*Bryant v. Gates*,
　532 F.3d 888 (D.C. Cir. 2008) ....................................................... 37

*Cable News Network v. Anderson*,
　723 F. Supp. 835 (D.D.C. 1989) ............................................. 21, 30

*Catawba Cnty., N.C. v. E.P.A.*,
　571 F.3d 20 (D.C. Cir. 2009) .................................................... 32, 48

*City of Waukesha v. E.P.A.*,
　320 F.3d 228 (D.C. Cir. 2003) ....................................................... 32

---

[*]  Pursuant to Circuit Rule 28(a)(2), the authorities on which we principally rely are denoted with an asterisk.

*Clapper v. Amnesty Int'l USA,*
133 S. Ct. 1138 (2013) ..................................................................38

*Common Cause v. Biden,*
748 F.3d 1280 (D.C. Cir. 2014) ....................................................38

*Common Cause v. Biden,*
909 F. Supp. 2d 9 (D.D.C. 2012)...................................................46

*Consol. Edison Co. of N.Y. v. Bodman,*
449 F.3d 1254 (D.C. Cir. 2006)......................................................1

*Consumer's Union of U.S., Inc. v. Periodical Correspondent's Ass'n,*
515 F.2d 1341 (D.C. Cir. 1975)....................................................21

\* *Doe v. McMillan,*
412 U.S. 306 (1973)............................................18, 19, 20, 23, 30

\* *Eastland v. U.S. Servicemen's Fund,*
421 U.S. 491 (1975)................................ 19, 20, 21, 22, 23, 24, 25, 28, 30, 38

*El-Shifa Pharm. Indus. Co. v. United States,*
607 F.3d 836 (D.C. Cir. 2010)..................................................41, 42

*F.E.C. v. Wright,*
777 F. Supp. 525 (N.D. Tex. 1991) ..............................................21

*Fields v. Office of Eddie Bernice Johnson,*
459 F.3d 1 (D.C. Cir. 2006)...............................................18, 21, 22

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000)......................................................................33

*Gen. Elec. Co. v. Jackson,*
610 F.3d 110 (D.C. Cir. 2010)......................................................36

*Gojack v. United States,*
384 U.S. 702 (1966)......................................................................38

*Gonzalez-Vera v. Kissinger,*
449 F.3d 1260 (D.C. Cir. 2006)....................................................46

\* *Gravel v. United States*,
    408 U.S. 606 (1972)..................... 1, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 30

*Grocery Mfrs. Ass'n v. E.P.A.*,
    693 F.3d 169 (D.C. Cir. 2012).......................................................33

*Gudavich v. Dist. of Columbia*,
    22 F. App'x 17 (D.C. Cir. 2001) .................................................17

*Haan v. Noem*,
    No. 13-cv-1009, 2013 WL 5701638 (D.S.D. Oct. 17, 2013) ......................43

*Harrington v. Bush*,
    553 F.2d 190 (D.C. Cir. 1977)................................................46, 48

*Hastings v. U.S. Senate, Impeachment Trial Comm.*,
    716 F. Supp. 38 (D.D.C.)........................................................21, 52

*Hayes v. Dist. of Columbia*,
    923 F. Supp. 2d 44 (D.D.C. 2013)................................................48

\* *Helstoski v. Meanor*,
    442 U.S. 500 (1979)........................................................19, 22, 23

*Herbert v. Nat'l Acad. of Scis.*,
    974 F.2d 192 (D.C. Cir. 1992)....................................................18

*Hickman v. U.S. Dep't of Defense*,
    389 F. App'x 1 (D.C. Cir. 2010) .................................................32

*Howard v. Office of Chief Admin. Officer, U.S. House of Representatives*,
    720 F.3d 939 (D.C. Cir. 2013)....................................................18

*Hurt v. Am. Governors & Conference of Mayors*,
    210 F. App'x 15 (D.C. Cir. 2006) ...............................................32

*Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*,
    659 F.2d 234 (D.C. Cir. 1981).....................................................1

*In re Contempt Finding in United States v. Stevens*,
    663 F.3d 1270 (D.C. Cir. 2011)..................................................37

*In re Grand Jury Subpoenas*,
　　571 F.3d 1200 (D.C. Cir. 2009)...................................................20

*In re Request for Access to Grand Jury Materials*,
　　833 F.2d 1438 (11th Cir. 1987) ................................................21

*In re Swine Flu Immunization Prods. Liab. Litig.*,
　　880 F.2d 1439 (D.C. Cir. 1989)...................................................18

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
　　478 U.S. 221 (1986)..................................................................41

*Jewish War Veterans of the U.S.A., Inc. v. Gates*,
　　506 F. Supp. 2d 30 (D.D.C. 2007)..............................................22

*Jones v. Mirgon*,
　　No. 88-7001, 1989 WL 105498 (D.C. Cir. Aug. 31, 1989) .........................17

*Judicial Watch, Inc. v. U.S. Senate*,
　　432 F.3d 359 (D.C. Cir. 2005) ................................................39

*Kilbourn v. Thompson*,
　　103 U.S. 168 (1880)..................................................................19

*Kingman Park Civic Ass'n v. Gray*,
　　--- F. Supp. 2d ----, No. 13-cv-990, 2014 WL 1920496
　　(D.D.C. May 14, 2014)...............................................................34

* *Lujan v. Defenders of Wildlife*,
　　504 U.S. 555 (1992)...............................................32, 33, 37, 38

*Luther v. Borden*,
　　48 U.S. (7 How.) 1 (1849) ......................................................46

* *Marshall Field & Co. v. Clark*,
　　143 U.S. 649 (1892)...................................................28, 47, 50

*Massachusetts v. E.P.A.*,
　　549 U.S. 497 (2007).................................................................42

*McGrain v. Daugherty*,
　　273 U.S. 135 (1927).................................................................22

* *Metzenbaum v. F.E.R.C.*,
    675 F.2d 1282 (D.C. Cir. 1982)..........................................................51, 52, 53

* *MINPECO, S.A. v. Conticommodity Servs., Inc.*,
    844 F.2d 856 (D.C. Cir. 1988)..........................................................22, 23, 24

*Morgan v. United States*,
    801 F.2d 445 (D.C. Cir. 1986)..........................................................43

*Mtn. States Legal Found. v. Glickman*,
    92 F.3d 1228 (D.C. Cir. 1996)..........................................................39

*Nat'l Wildlife Fed'n v. E.P.A.*,
    286 F.3d 554 (D.C. Cir. 2002)..........................................................34

*N.Y. Rehab. Care Mgmt., LLC v. N.L.R.B.*,
    506 F.3d 1070 (D.C. Cir. 2007)..........................................................36

*Nixon v. United States*,
    506 U.S. 224 (1993)..........................................................45

*Nixon v. U.S. Senate*,
    887 F.2d 332 (D.C. Cir. 1989)..........................................................21

*Payne v. D.C. Gov't*,
    722 F.3d 345 (D.C. Cir. 2013)..........................................................36

*Porteous v. Baron*,
    729 F. Supp. 2d 158 (D.D.C. 2010)..........................................................30

*Powell v. McCormack*,
    395 F.2d 577 (D.C. Cir. 1968)..........................................................44

*Prevost v. Morgenthau*,
    106 F.2d 330 (D.C. Cir. 1939)..........................................................51

*Pub. Citizen v. U.S. Dist. Court for D.C.*,
    486 F.3d 1342 (D.C. Cir. 2007)..........................................................51

*Raines v. Byrd*,
    521 U.S. 811 (1997)..........................................................33, 37

*Ray v. Proxmire*,
    581 F.2d 998 (D.C. Cir. 1978)......................................................................20

*Rempfer v. Sharfstein*,
    583 F.3d 860 (D.C. Cir. 2009)....................................................................36

*Schneider v. Kissinger*,
    412 F.3d 190 (D.C. Cir. 2005)..............................................................42, 46

*Shankar v. ACS-GSI*,
    258 F. App'x 344 (D.C. Cir. 2007) ............................................................48

*Smith v. Eagleton*,
    455 F. Supp. 403 (W.D. Mo. 1978)............................................................21

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)......................................................................................32

*Tenney v. Brandhove*,
    341 U.S. 367 (1951)....................................................................................18

*United States v. Ballin*,
    144 U.S. 1 (1892)........................................................................................37

*United States v. Brewster*,
    408 U.S. 501 (1972)..............................................................................22, 43

*United States v. Durenberger*,
    No. 93-cr-65, 1993 WL 738477 (D. Minn. Dec. 3, 1993) ...........................21

*United States v. Eilberg*,
    465 F. Supp. 1080 (E.D. Pa. 1979)............................................................21

*United States v. Helstoski*,
    442 U.S. 477 (1979)....................................................................................19

* *United States v. Johnson*,
    383 U.S. 169 (1966)........................................ 18, 19, 22, 23, 27, 30

*United States v. Munoz-Flores*,
    495 U.S. 385 (1990)....................................................................................41

*United States v. Rayburn House Office Bldg.*,
  497 F.3d 654 (D.C. Cir. 2007)..................................................................23

*United States v. Saani*,
  650 F.3d 761 (D.C. Cir. 2011)..................................................................37

*Valley Forge Christian Coll. v. Ams. United for Separation
  of Church & State, Inc.*,
  454 U.S. 464 (1982)..................................................................................36

\* *Vander Jagt v. O'Neill*,
  699 F.2d 1166 (D.C. Cir. 1983).....................................................48, 51, 53

\* *Vander Jagt v. O'Neill*,
  524 F. Supp. 519 (D.D.C. 1981)...............................................................52

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990)..................................................................................36

*Wilderness Soc'y v. Norton*,
  434 F.3d 584 (D.C. Cir. 2006)...........................................................39, 40

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
  296 F.3d 1154 (D.C. Cir. 2002)................................................................32

*Wyo. Outdoor Council v. U.S. Forest Serv.*,
  165 F.3d 43 (D.C. Cir. 1999)....................................................................35

**Statutes, Rules, and Constitutional Provisions:**

28 U.S.C. § 1291 ........................................................................................1

44 U.S.C. § 713 ..........................................................................................4

D.C. Circuit Rule 28(a)(5) ........................................................................2

D.D.C. LCvR 78.1 ...................................................................................17

Fed. R. App. P. 28(f) .................................................................................2

Fed. R. Civ. P. 12(b)(1)......................................................................17, 18

Fed. R. Civ. P. 12(b)(6)...........................................................................17

Fed. R. Civ. P. 78 .............................................................................17

U.S. Const. art. I, § 2, cl. 5 .............................................................21

U.S. Const. art. I, § 3, cl. 6 .......................................................21, 45

U.S. Const. art. I, § 6, cl. 1 .........................................................1, 27

U.S. Const. art. I, § 5, cl. 1 .............................................................43

* U.S. Const. art. I, § 5, cl. 2 .............................2, 21, 43, 47, 52

* U.S. Const. art. I, § 5, cl. 3 .................................2, 46, 47, 49

U.S. Const. art. I, § 7, cl. 2 .............................................................47

U.S. Const. art. II, § 2, cl. 2 .............................................................21

U.S. Const. art. III, § 2 ....................................................................41

**Legislative Authorities:**

156 Cong. Rec. H7891-99 (daily ed. Dec. 2, 2012) .......................3, 12, 13

156 Cong. Rec. H8033 (daily ed. Dec. 3, 2010)...................................13

H. Rep. No. 63-570 (1914) ...............................................................43

H. Res. 7, 113th Cong. (2013) ...........................................................16

H. Res. 31, 112th Cong. (2011) .........................................................16

H. Res. 1737, 111th Cong. (2010) .............................................3, 12, 13

Journal of the House of Representatives, 111th Cong., 2d Sess.,
    ¶ 116.25–.27 (Dec. 2, 2010) ...............................................3, 13

* Rep. of the Comm. on Standards of Official Conduct, *In the Matter of
    Representative Charles B. Rangel*, H. Rep. No. 111-661
    (Nov. 29, 2010)......................................... 3, 7, 8, 9, 10, 11, 12, 44

Rules of the Committee on Ethics, 113th Cong. (2013)

    Rule 24(e) ................................................................................3

Rules of the Committee on Standards of Official Conduct, 111th Cong. (2009)

    Rule 1(a) ...............................................................................8, 9

    Rule 24(e) ................................................................................3

    Rule 25 ..................................................................................31

Rules of the House of Representatives, 111th Cong. (2009)

    Rule I.1...............................................................................13, 49

    Rule II.2(c)(4) ..........................................................................4

    Rule XIII.2(a) .........................................................................47

## **Other Authorities:**

2 Asher C. Hinds, Hinds' Precedents § 1251 (1907)................................................47

4 Asher C. Hinds, Hinds' Precedents § 2792 (1907)................................................15

4 Asher C. Hinds, Hinds' Precedents § 2793 (1907)................................................15

Clerk, U.S. House of Representatives, *Current Vacancies* ......................................6

Christopher Lee, *Rangel's Pet Cause Bears His Own Name*, Wash. Post,
    July 15, 2008..........................................................................6

Constitution, Jefferson's Manual & Rules of the House of Representatives,
    H. Doc. No. 111-157, § 542 (2011)..............................................47

Daphne Retter, *Big Wheel Benz the Rules*, N.Y. Post, Sept. 18, 2008 .....................7

David Kocieniewski, *For Rangel, Four Rent-Stabilized Apartments*,
    N.Y. Times, July 11, 2008.......................................................7

Isabel Vincent & Susan Edelman, *Tricky Charlie's Carib "Hideaway,"*
    N.Y. Post, Aug. 31, 2008........................................................7

John Bresnahan, *Did Ethics Staff Taint Maxine Waters Probe?*, Politico
    (July 18, 2011) ....................................................................14

Karen L. Haas, Clerk, Statistics of the Congressional Election of November 2, 2010 (corrected to June 3, 2011) .................................................................. 16

Karen L. Haas, Clerk, Statistics of the Presidential and Congressional Election of Nov. 6, 2012 (corrected to Feb. 28, 2013) ................................................. 16

Letter from Hon. Charles B. Rangel to Hon. Nancy Pelosi (Mar. 3, 2010) ........... 16

Lewis Deschler, Deschler's Precedents of the U.S. House of Representatives, H. Doc. 94-661, 94th Cong. 2d Sess. (1979) .......................................... 44, 49

Statement of the Chair & Ranking Member of the Comm. on Standards & Official Conduct (Feb. 10, 2009) .................................................................. 8

William R. Martin & Kerry Brainard Verdi, Report of the Outside Counsel to the Comm. on Ethics, In the Matter of Representative Maxine Waters (Sept. 25, 2012) ................................................................................ 14

Wm. Holmes Brown, Charles W. Johnson, & John V. Sullivan, House Practice:  A Guide to the Rules, Precedents and Procedures of the House, 112th Cong. (1st Sess. 2011) ............................................................ 49

# GLOSSARY

| | |
|---|---|
| Ethics Committee Report | Rep. of the Comm. on Standards of Official Conduct, In the Matter of Representative Charles B. Rangel, H. Rep. No. 111-661, vol. I, at 1-3, 6-14 (Nov. 29, 2010) |
| Rangel-ASC | Rangel adjudicatory subcommittee |
| Rangel-ISC | Rangel investigative subcommittee |
| SAV | Statement of Alleged Violation |

## JURISDICTIONAL STATEMENT

The district court lacked jurisdiction to consider the merits of the claims of appellant, the Honorable Charles B. Rangel, U.S. Representative of New York's 13th congressional district, *see* Mem. Op. at 8-48 (JA 398-438), although it had jurisdiction to make that determination, *see, e.g.*, *Consol. Edison Co. of N.Y. v. Bodman*, 449 F.3d 1254, 1257 (D.C. Cir. 2006); *Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234, 239 (D.C. Cir. 1981).  This Court has jurisdiction over the Congressman's appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

A.  Did the district court properly conclude that appellees are absolutely immune from suit under the Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1 ("for any Speech or Debate in either House, they [Senators and Representatives] shall not be questioned in any other Place"), where Congressman Rangel's claims are predicated on appellee activities that are "'an integral part of the deliberative and communicative processes by which Members [of Congress] participate in committee and House proceedings with respect to . . . matters which the Constitution places within the jurisdiction of [the] House,'" Mem. Op. at 37 (JA 427) (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972)).

B.  Did the district court properly conclude that Congressman Rangel lacks Article III standing where his asserted injuries are neither concrete and

1

particularized, nor fairly traceable to appellees' actions, nor redressable by a favorable judicial decision. *See* Mem. Op. at 8-20 (JA 398-410).

C. Did the district court properly conclude that Congressman Rangel's claims present non-justiciable political questions where (i) those claims constitute a collateral attack on the discipline imposed on him by the U.S. House of Representatives pursuant to the Discipline Clause, U.S. Const. art. I, § 5, cl. 2 ("Each House may . . . punish [one of] its Members for disorderly Behavior"); and (ii) the principal relief requested – modification of the House Journal – would directly infringe a responsibility textually committed to the House under the Journal Clause, U.S. Const. art. I, § 5, cl. 3 ("Each House shall keep a Journal of its Proceedings, and from time to time publish the same . . . ."), *see* Mem. Op. at 20-36 (JA 410-26).

## PERTINENT AUTHORITIES

Pursuant to Rule 28(f) of the Federal Rules of Appellate Procedure and Circuit Rule 28(a)(5), pertinent constitutional provisions and other authorities are set forth in full in the Addendum at the back of this brief.

## STATEMENT OF THE CASE

This case arises out of the House's exercise of its Discipline Clause authority, in particular, its censure of Congressman Rangel by a vote of 333-79 on December 2, 2010, as the 111th Congress (Jan. 3, 2009 – Jan. 3, 2011) was

drawing to a close.  *See* 156 Cong. Rec. H7898-99 (daily ed. Dec. 2, 2012) (vote

on H. Res. 1737, 111th Cong. (2010)); *id.* at H7891-97 (debate on H. Res. 1737).

That vote was the culmination of more than two years of investigatory and

adjudicatory proceedings by the House Committee on Ethics ("Committee" or

"Ethics Committee") concerning allegations that the Congressman violated

applicable standards of official conduct.[1]  *See* Rep. of the Comm. on Standards of

Official Conduct, *In the Matter of Representative Charles B. Rangel*, H. Rep.

No. 111-661, vol. I, at 1-3, 6-14 (Nov. 29, 2010) ("Ethics Committee Report"),

*available (along with volumes II and III) at* http://ethics.house.gov/committee-

report/matter-representative-charles-b-rangel (last visited June 25, 2014) (detailing

Committee's misconduct findings, and recommending that House censure

Congressman Rangel).[2]

Pursuant to the Journal Clause, a report of the December 2, 2010 floor

proceedings concerning the Congressman was included in the House Journal for

that day.  *See* Journal of the House of Representatives, 111th Cong., 2d Sess.

---

[1]  During the 111th Congress and earlier, the Committee's official name was
Committee on Standards of Official Conduct.  The name change to Committee on
Ethics occurred at the beginning of the 112th Congress.

[2]  Short of expulsion, censure was then, and still is, the most severe form of
discipline the House may impose on one of its Members.  *See* Rule 24(e), Rules of
the Committee on Standards of Official Conduct, 111th Cong. (2009) ("111th
Committee Rules") (ADD-009); Rule 24(e), Rules of the Committee on Ethics,
113th Cong. (2013) (ADD-004).

¶ 116.25–.27 (Dec. 2, 2010), *available at* http://www.gpo.gov/fdsys/pkg/GPO-HJOURNAL-2010/pdf/GPO-HJOURNAL-2010-2-2.pdf (last visited June 25, 2014).  Subsequently, the House Journal for the relevant time period was printed, hard copies were distributed widely (including to state legislatures, state executives, the State Department, congressional offices, and libraries), and an electronic copy was made available online.[3]

More than two years later, Congressman Rangel asked the district court to review the House's exercise of its Discipline Clause authority, even while tacitly acknowledging that there was "clear and convincing evidence of [his] wrongdoing."  Compl. ¶ 72 (Apr. 22, 2013) (JA 34).  As best we can tell, the Complaint asserts that:

- applicable House and Ethics Committee Rules afforded the Congressman certain constitutional protections in the context of the Committee's disciplinary proceeding, *see id*. ¶¶ 37, 74 (JA 27, 35) (referring to "[d]ue [p]rocess" and "fundamental constitutional rights");

---

[3] *See* 44 U.S.C. § 713 ("There shall be printed of the Journals of the Senate and House of Representatives . . . copies, which shall be distributed as [specified]."); Rule II.2(c)(4), Rules of the House of Representatives, 111th Cong. (2009) ("111th House Rules") (ADD-014) ("The Clerk shall . . . send a copy of the Journal to the executive of and to each branch of the legislature of every State as may be requested by such State officials.").

- compliance with those rules was a predicate to the House's imposition of discipline, *see id*. ¶¶ 57, 96, 100 (JA 31, 39-41);

- some appellees allegedly did not follow the rules, *see id*. ¶¶ 5, 12-26 (JA 17-24);

- the Congressman, therefore, has a cause of action to seek, in effect, to have his censure set aside, *see id*. ¶ 100 (JA 40-41) (requesting declaration that Congressman's constitutional rights violated); *id*. ¶ 103 (JA 41) (seeking injunction requiring appellees "to take all necessary steps to vacate, strike and remove the recording of censure, as voted on by the House and as set forth in The Journal"); *id*. ¶ 108 (JA 42) (seeking "Order or Writ in the nature of mandamus" requiring Speaker and Clerk "to cause to be removed from The Journal . . . any reference to the fact that [Congressman Rangel] had been censured").

In collaterally attacking the censure vote, the Congressman did not sue the institution that actually censured him. Instead, he sued (i) the Speaker and Clerk of the House, *id*. ¶¶ 9-11 (JA 18); (ii) the Chair and Ranking Member of the Ethics Committee during the 111th Congress (Congresswoman Zoe Lofgren and

Congressman Jo Bonner, respectively), *id*. ¶¶ 12, 13 (JA 18-19)[4]; (iii) four of the eight other Members of the Ethics Committee during the 111th Congress (Congressmen Michael T. McCaul, K. Michael Conaway, Charles W. Dent, and Gregg Harper), *id*. ¶¶ 21-26 (JA 22-24); and (iv) three staffers who worked for the Committee during the 111th Congress (R. Blake Chisam, C. Morgan Kim, and Stacey Sovereign), *id*. ¶¶ 14-20 (JA 19-22).

On July 12, 2013, appellees moved to dismiss. *See* Defs.' Mot. to Dismiss (July 12, 2013) (JA 248-324). On December 11, 2013, after full briefing, but without hearing oral argument, the district court granted that motion on three independent grounds: (i) Congressman Rangel lacks Article III standing, *see* Mem. Op. at 8-20 (JA 398-410); (ii) his claims present non-justiciable political questions, *see id*. at 20-36 (JA 410-26); and (iii) appellees are immune from suit under the Speech or Debate Clause, *see id*. at 36-48 (JA 426-38).[5] Four weeks later, Congressman Rangel noticed this appeal. *See* Civil Notice of Appeal (Jan. 7, 2014) (JA 440).

---

[4] Congressman Bonner resigned from the House effective August 2, 2013. *See* Clerk, U.S. House of Representatives, *Current Vacancies*, http://clerk.house.gov/member_info/vacancies.aspx (last visited June 25, 2014).

[5] The district court did not reach our contentions that the Complaint should be dismissed (i) for failure to state a claim, and (ii) as a matter of discretion. *See* Defs.' Mot. to Dismiss at 46-55 (JA 312-21); Mem. Op. at 48 n.24 (JA 438).

# FACTUAL BACKGROUND

## I.    Misconduct Allegations Concerning Congressman Rangel.

In 2008, the press began running stories that questioned Congressman Rangel's use of a rent-stabilized apartment as a campaign office;[6] his solicitation of donations to build a center to house his congressional papers;[7] and his alleged failure to disclose, or to pay taxes on, rental income earned on a villa in the Dominican Republic.[8]  In response, Congressman Rangel asked the Ethics Committee to investigate these allegations.  *See* Ethics Comm. Report, vol. I, at 258, 266, 644.

## II.    Investigative Subcommittee Proceedings.

On September 24, 2008, during the 110th Congress, the Committee acceded to the Congressman's request and empaneled an investigative subcommittee

---

[6]  *See, e.g.*, David Kocieniewski, *For Rangel, Four Rent-Stabilized Apartments*, N.Y. Times, July 11, 2008, *available at* http://www.nytimes.com/2008/07/11/nyregion/11rangel.html (last visited June 25, 2014).

[7]  *See, e.g.*, Christopher Lee, *Rangel's Pet Cause Bears His Own Name*, Wash. Post, July 15, 2008, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2008/07/14/AR2008071402546.html (last visited June 25, 2014).

[8]  *See, e.g.*, Isabel Vincent & Susan Edelman, *Tricky Charlie's Carib "Hideaway,"* N.Y. Post, Aug. 31, 2008, *available at* http://nypost.com/2008/08/31/tricky-charlies-carib-hideaway/ (last visited June 25, 2014); Daphne Retter, *Big Wheel Benz the Rules*, N.Y. Post, Sept. 18, 2008, *available at* http://nypost.com/2008/09/18/big-wheel-benz-the-rules/ (last visited June 25, 2014).

("Rangel-ISC") consisting of two Members each from the majority and minority parties (one of whom was Congressman Bonner). *See id.* at 258, 428-29.

In February 2009, shortly after the commencement of the 111th Congress, the Committee reauthorized an investigative subcommittee to continue the Rangel investigation, and appointed the same four Members to the Rangel-ISC for the 111th Congress. *See* Statement of the Chair & Ranking Member of the Comm. on Standards & Official Conduct (Feb. 10, 2009), *available at* http://ethics.house.gov/ sites/ethics.house.gov/files/documents/press_statement_rangel_subcomm_ 2009.pdf (last visited June 25, 2014); *see generally* Rule 1(a), 111th Comm. Rules (ADD-007) (Committee rules applicable to investigative subcommittees).

Over the course of its nearly two-year probe, the Rangel-ISC interviewed over 40 witnesses (including Congressman Rangel); reviewed thousands of pages of documents and testimony; and held more than 60 meetings. *See* Ethics Comm. Rep., vol. I, at 145, 267, 284. The investigation culminated, in June 2010, in a 13-count Statement of Alleged Violation ("SAV"), which alleged ethical misconduct by the Congressman with respect to (i) his solicitation of donations to fund an academic center to house his papers; (ii) his use of a rent-stabilized residential apartment for campaign purposes; (iii) errors and omissions on his financial disclosure statements; and (iv) his failure to report and pay taxes on rental income from his villa in the Dominican Republic. *See id.* at 147, 267. The Rangel-ISC

found "substantial reason" to believe that the Congressman committed the alleged violations, *see id.* at 429; one Member dissented in part, *see id*. at 506-79.

## III. Adjudicatory Subcommittee Proceedings.

In July 2010, the Rangel-ISC transmitted the SAV to the Ethics Committee, whereupon Congresswoman Lofgren, the then-Committee chair, formed an eight-Member adjudicatory subcommittee ("Rangel-ASC") to consider the SAV. *See id.* at 144, 259, 357; *see generally* Rule 1(a), 111th Comm. Rules (ADD-007) (Committee rules applicable to adjudicatory subcommittees). The Rangel-ASC, like the Rangel-ISC, was divided evenly between Members of the majority and minority parties.[9]

In early October 2010, the Rangel-ASC announced that it would hold a hearing on November 15, 2010. *See* Ethics Comm. Rep., vol. I, at 6, 394, 397. Congresswoman Lofgren, as Chair of the Rangel-ASC, communicated this fact to Congressman Rangel on October 12, 2010. *See id.* at 364. Her communication to the Congressman also (i) committed to providing him, in advance of the hearing, with the evidence the Rangel-ASC planned to consider; (ii) set a deadline for the Congressman to lodge objections to that evidence and to designate additional evidence; and (iii) described the applicable procedures. *See id.* at 363-67.

---

[9] The eight Members were Congresswoman Lofgren and Congressmen McCaul, Conaway, Dent, and Harper, plus three other Members not named as defendants in this case.

On October 22, 2010, the Rangel-ASC provided Congressman Rangel with the evidence it planned to consider and a list of witnesses it intended to call, *see id.* at 407-15, 456-57, as well as with exculpatory evidence it had obtained, *see, e.g.*, *id.* at 418-25.  The Congressman neither objected to any of the designated evidence or witnesses, nor designated any additional evidence of his own.  *See id.* at 456-57.

When the adjudicatory hearing commenced on November 15, 2010, Rangel-ASC Chair Lofgren emphasized that each SAV count had to "be[] prove[n] by clear and convincing evidence" by "[a]ttorneys from the committee's nonpartisan professional staff," *id.* at 429; reminded Congressman Rangel that he was "not required to present a case in his defense," but would "have an opportunity to present his side of the story [if] he wish[ed] to do so," *id.* at 429-30; and advised the Congressman that "the subcommittee [would] not and may not draw a negative inference" from his decision "not to present a case," *id.* at 430.

Congressman Rangel advised that his counsel had withdrawn shortly before the hearing, *see id.* at 468-70, 601, but he did not seek a continuance, *see id.* at 435-42.  The Rangel-ASC, however, undertook on its own to consider whether to continue the hearing, ultimately deciding not to.  *See id.* at 447-50.[10]  In the midst of all this, Congressman Rangel left the hearing and did not return, *see id.* at 446-

---

[10]  Congressman Rangel "do[es] not question the propriety of the decision to deny [him] a postponement."  Br. for Pl.-Appellant at 35 n.6 (May 15, 2014) ("Rangel Brief").

47, at which point Rangel-ASC Chair Lofgren reiterated that "it [was] his right not to participate in this matter" and "no conclusions as to the facts of this matter [would] be drawn" from Congressman Rangel's "deci[sion] not to participate in this hearing," *id.* at 450.

The Rangel-ASC then approved the introduction of certain evidence, *see id.* at 454-55; concluded, after questioning Mr. Chisam – the then-Chief Counsel and Staff Director for the Ethics Committee – that the record contained "no genuine issue of material fact with respect to any of the counts in the [SAV]," *id.* at 496; *see also id.* at 398; and denied motions for a bill of particulars and to dismiss filed by Congressman Rangel's former counsel, *see id.* at 497.  The Rangel-ASC, in executive session, then "consider[ed] each of the 13 counts contained in the [SAV]" in light of "all evidence that was properly entered into the record in the[] proceedings," i.e., "more than 550 exhibits . . . total[ing] more than 4,200 pages," *id.* at 496-97; *see also id.* at 7, 398, 499, 604.

On November 16, 2010, after several hours of executive session deliberations, the Rangel-ASC determined that 11 of the 13 counts had been proven by "clear and convincing evidence."  *Id.* at 2; *see also id.* at 1 (summarizing conclusions), 6-14, 396-405, 603-08.  The Rangel-ASC then sent its report, including its conclusions, to the full Committee.  *See id.* at 2, 396-405.

## IV.    Sanction Hearing.

On November 18, 2010, the full Ethics Committee met to consider what sanction, if any, to recommend to the full House in light of the Rangel-ASC's conclusions. *See id.* at 2, 616-89.  Congressman Rangel and Mr. Chisam presented arguments, and Committee Members questioned both. *See id.*  By a 9-1 vote, the Committee agreed to recommend that the House censure Congressman Rangel and require him to pay restitution for any unpaid taxes. *See id.* at 2, 680-81.  On November 29, 2010, the Committee submitted to the full House its proposed sanction in the form of a proposed resolution (H. Res. 1737), along with its report (the Ethics Committee Report). *See id.* at III.

## V.    House Floor Proceedings on Censure Resolution.

The House debated H. Res. 1737 on December 2, 2010.  Committee Chair Lofgren, Committee Ranking Member Bonner, and Rangel-ASC Ranking Member McCaul (among others) spoke in favor of the resolution. *See* 156 Cong. Rec. H7891-93 (daily ed. Dec. 2, 2010).  Congressman Rangel spoke against the resolution, as did several other House Members, including one Member of the Rangel-ISC and one Member of the Rangel-ASC. *See id.* at H7893-96.  None of those who spoke against the resolution denied that the adjudicated misconduct had occurred; rather, each pressed for a less severe form of discipline known as a reprimand. *See id.*

12

At the conclusion of the debate, the House defeated an amendment which, in pertinent part, would have substituted "be reprimanded" for "be censured" in H. Res. 1737. *See id*. at H7897-98 (amendment defeated by vote of 146-267). The House then voted 333-79 to adopt H. Res. 1737, *see id*. at H7898-99, and, pursuant to that resolution, then-Speaker Nancy Pelosi read the text of the resolution while Congressman Rangel stood in the well of the House, *see id.* at H7899.

## VI.    Approval of the Journal.

After the floor proceedings concluded on December 2, 2010, the then-Clerk, in the normal course of her duties, prepared a report of that day's proceedings for inclusion in the Journal, and the House Parliamentarian, in the normal course of his duties, reviewed that report for parliamentary accuracy. The report included a description of the censure proceedings. *See* Journal of the House of Representatives, 111th Cong., 2d Sess. ¶ 116.25–.27 (Dec. 2, 2010), *available at* http://www.gpo.gov/fdsys/pkg/GPO-HJOURNAL-2010/pdf/GPO-HJOURNAL-2010-2-2.pdf (last visited June 25, 2014).

The following day, the Speaker pro tempore approved the Journal. *See* 156 Cong. Rec. H8033 (daily ed. Dec. 3, 2010). Although any Member could have called for a vote on the Journal's approval, none did; as a result, approval of the Journal was deemed agreed to. *See* Rule I.1, 111th House Rules (ADD-013).

13

## VII.  Post-Censure Proceedings and Events.

In July 2011, an undated memorandum written by Mr. Chisam became

public.  *See, e.g.*, John Bresnahan, *Did Ethics Staff Taint Maxine Waters Probe?*,

Politico (July 18, 2011), *available at* http://www.politico.com/news/stories/0711/

59225.html (last visited June 25, 2014).  That memorandum – which, from its

content, appears to have been drafted in late-November 2010 – dealt principally

with certain staff communications that concerned the Rangel disciplinary matter

and a separate Ethics Committee investigation involving the Honorable Maxine

Waters, U.S. Representative of California's 43rd congressional district.  *See* Mem.

from R. Blake Chisam, Staff Dir. & Chief Counsel, to Hon. Zoe Lofgren, Chair,

House Comm. on [Ethics] (undated) (JA 55-65) ("Chisam Memorandum").[11]

The Chisam Memorandum does not concern the evidence considered by the

Rangel-ASC.  Nevertheless, on August 9, 2011, exclusively on the basis of the

Chisam Memorandum, Congressman Rangel moved the Committee to "withdraw

---

[11]  In July 2011, the Committee retained an outside attorney to report on certain issues raised by Congresswoman Waters in connection with the Committee's investigation of her.  In carrying out that responsibility, the outside attorney evaluated the same staff-communication issue discussed in the Chisam Memorandum, and effectively concluded that no rules were violated in the Rangel disciplinary proceedings.  *See* William R. Martin & Kerry Brainard Verdi, Report of the Outside Counsel to the Comm. on Ethics, In the Matter of Representative Maxine Waters at 13, 46-66 (Sept. 25, 2012), *available at* http://ethics.house.gov/ sites/ethics.house.gov/files/Appendix%20B%20Report%20of%20the%20Outside %20Counsel.pdf (last visited June 25, 2014); *see also* Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss at 50-51 (July 12, 2013) (JA 316-17).

its actions" against him, asserting that the Rangel ACS's determination "was clearly tainted," and "depriv[ed] [the Congressman of his] constitutional right to receive a fair and impartial [h]earing consistent with due process." Combined Affirmation Mem. of Law at 1 (Aug. 9, 2011) (JA 133).

The Committee rejected Congressman Rangel's motion. *See* Letter from Hon. Jo Bonner, Chair, & Hon. Linda T. Sanchez, Ranking Member, House Comm. on Ethics, to Hon. Charles B. Rangel, at 1 (Dec. 19, 2012) (JA 168-69) ("[T]here is no legal or factual basis supporting a conclusion that you have been deprived of any constitutional rights in your proceedings before the [Ethics] Committee . . . or the entire House of Representatives . . . .").

Congressman Rangel never sought relief from the full House, even though there is precedent for such relief. *See* 4 Asher C. Hinds, Hinds' Precedents § 2792 (1907) ("Hinds' Precedents") (43rd House adopted resolution rescinding 37th House's censure of Rep. Simon Cameron and ordering word "rescission" entered in Journal's margin); *id.* § 2793 (44th House adopted resolution rescinding 43rd House's censure of Rep. John Young Brown).

## VIII. Congressman Rangel's Committee Service and Electoral Successes.

In March 2010, during the pendency of the Rangel-ISC investigation, Congressman Rangel voluntarily stepped down as Chair of the House Ways and Means Committee; however, he remained a Member of that committee. *See* Letter

from Hon. Charles B. Rangel to Hon. Nancy Pelosi, Speaker of the House, (Mar. 3, 2010), *available at* http://i2.cdn.turner.com/cnn/2010/images/03/03/0032.rangel.pdf (last visited June 25, 2014).

In November 2010, and again in November 2012, Congressman Rangel won reelection to seats in the 112th and 113th Congresses, respectively.[12] And, during both of those Congresses, the Congressman again served, and continues to serve, on the Ways and Means Committee. *See* H. Res. 31, 112th Cong. (2011); H. Res. 7, 113th Cong. (2013).

## SUMMARY OF ARGUMENT

Congressman Rangel demanded that the district court "[i] decree that the House . . . lacked the authority under the Constitution and its own Rules to censure him; [ii] . . . sit in review of decisions made by the Ethics Committee, its subcommittees, and the House itself; and [iii] . . . rewrite the House Journal (or to order [appellees] to do so)." Mem. Op. at 48 (JA 438). The district court properly rejected those demands.

---

[12] *See* Karen L. Haas, Clerk, Statistics of the Congressional Election of November 2, 2010, at 34 (corrected to June 3, 2011), *available at* http://history.house.gov/Institution/Election-Statistics/2010election/ (last visited June 26, 2014); Karen L. Haas, Clerk, Statistics of the Presidential and Congressional Election of Nov. 6, 2012, at 43 (corrected to Feb. 28, 2013), *available at* http://history.house.gov/Institution/Election-Statistics/2012election/ (last visited June 26, 2014).

This Court should affirm because, like the district court, it has no authority to "un-censure" Congressman Rangel. *Id.* This is so because all eleven appellees are absolutely immune, under the Speech or Debate Clause, from Congressman Rangel's claims, *see infra* Argument, Part I; Congressman Rangel has not carried his burden of establishing that he has Article III standing here, *see infra* Argument, Part II; and the claims that he asserts run afoul of the political question doctrine, *see infra* Argument, Part III.[13]

## STANDARD OF REVIEW

Appellees moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). This Court reviews the grant of a Rule 12(b)(1) motion decided only on the basis of questions of law *de novo*, but it must accept any district court factual findings "unless they are clearly erroneous. *See Herbert v.*

---

[13] To the extent that Congressman Rangel contends the district court committed reversible error by not hearing oral argument on appellees' Motion to Dismiss, *see, e.g.*, Rangel Br. at iii, 17-18, the argument is meritless. The district court had very broad discretion to dispense with oral argument, *see generally* Fed. R. Civ. P. 78; LCvR 78.1 ("A party may in a motion or opposition request an oral hearing, but its allowance shall be within the discretion of the court."), and it obviously did not abuse that discretion here. *See, e.g.*, *Gudavich v. Dist. of Columbia*, 22 F. App'x 17, 18 (D.C. Cir. 2001) (per curiam) ("The district court committed no procedural error [by granting motion for summary judgment without hearing] because there is no requirement of a hearing."); *Jones v. Mirgon*, No. 88-7001, 1989 WL 105498, at *3 n.2 (D.C. Cir. Aug. 31, 1989) (per curiam) (refusing to "interfer[e] with the District Court's exercise of its normal discretion to allow or dispense with oral argument on . . . a [Rule 12(b)(6)] motion").

*Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *In re Swine Flu*

*Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1442-43 (D.C. Cir. 1989).

## ARGUMENT

### I.     Appellees Are Immune from Suit under the Speech or Debate Clause.

The district court held that "all of the defendants' activities fall within the

legitimate legislative sphere," Mem. Op. at 39 (JA 429), and that, therefore, "all

defendants are absolutely immune from suit under the [Speech or Debate] Clause,"

*id*. at 48 (JA 438).  The district court clearly was correct.[14]

#### A.     Brief Overview of the Speech or Debate Clause.

##### 1.     *History and Purpose of the Clause*.

The Speech or Debate Clause is rooted in the epic struggle for parliamentary

independence in 16th- and 17th-century England.  *See United States v. Johnson*,

383 U.S. 169, 178 (1966); *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951).  As a

result of the English experience, "[f]reedom of speech and action in the legislature

---

[14]  The district court stated that it was evaluating appellees' Speech or Debate arguments "under Rule 12(b)(6)."  Mem. Op. at 6 (JA 396).  While that was not outcome determinative, Speech or Debate immunity assertions are more properly evaluated under Rule 12(b)(1) since "[t]he Speech or Debate Clause operates as a jurisdictional bar when 'the actions upon which [a plaintiff] s[eeks] to predicate liability [a]re legislative acts.'"  *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 13 (D.C. Cir. 2006) (en banc) (quoting *Doe v. McMillan*, 412 U.S. 306, 318 (1973)); *see also Howard v. Office of Chief Admin. Officer, U.S. House of Representatives*, 720 F.3d 939, 941 (D.C. Cir. 2013).

was taken as a matter of course" by the Founders, and reflected in the Speech or Debate Clause. *Id.*

The purpose of the Clause "is to insure that the legislative function the Constitution allocates to Congress may be performed independently." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975). Accordingly, its "'central role' . . . is to 'prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary.'" *Id.* (quoting *Johnson*, 383 U.S. at 181, and *Gravel*, 408 U.S. at 617). "In the American governmental structure the clause serves the additional function of reinforcing the separation of powers so deliberately established by the Founders." *Johnson*, 383 U.S. at 178; *see also United States v. Helstoski*, 442 U.S. 477, 491 (1979).

Because the Clause's "guarantees . . . are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that such important values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979). As a result, the Supreme Court has mandated "[w]ithout exception [that the courts] read the Speech or Debate Clause broadly to effectuate its purposes," *Eastland*, 421 U.S. at 501; *see also McMillan*, 412 U.S. at 311; *Gravel*, 408 U.S. at 624; *Johnson*, 383 U.S. at 179; *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880).

19

2.    *Scope of the Clause.*

The protections afforded by the Speech or Debate Clause apply to all

activities "within the 'legislative sphere,'" *McMillan*, 412 U.S. at 312 (quoting

*Gravel*, 408 U.S. at 624-25), which includes all activities that are

> "an integral part of the deliberative and communicative
> processes by which Members participate in committee
> and House proceedings with respect to the consideration
> and passage or rejection of proposed legislation *or with
> respect to other matters which the Constitution places
> within the jurisdiction of either House*."

*Eastland*, 421 U.S. at 504 (quoting *Gravel*, 408 U.S. at 625) (emphasis added).

This "scope" definition has two parts.

*First*, the definition makes clear that the Clause's protections apply to both

(i) the quintessentially legislative activity of "consideration and passage or

rejection of proposed legislation," *and* (ii) "other matters which the Constitution

places within the jurisdiction of either House."  Importantly for purposes of this

case, these "other matters which the Constitution places within the jurisdiction of

either House" include Discipline Clause activities.  *See, e.g.*, *In re Grand Jury

Subpoenas*, 571 F.3d 1200, 1205 (D.C. Cir. 2009); *Ray v. Proxmire*, 581 F.2d 998,

1000 (D.C. Cir. 1978); Mem. Op. at 8, *Boehner v. McDermott*, No. 98-cv-0594,

slip op. (D.D.C. Aug. 20, 2002), attached as Exhibit 2 to Defs.' Mot. to Dismiss

(ECF No. 14-4) ("[O]ne such [other] matter is enforcement of standards of conduct

[which] is placed within the exclusive jurisdiction of the two houses of Congress

by the Rulemaking and Discipline Clauses . . . ."); *F.E.C. v. Wright*, 777 F. Supp.

525, 530 (N.D. Tex. 1991); *United States v. Eilberg*, 465 F. Supp. 1080, 1083

(E.D. Pa. 1979); *United States v. Durenberger*, No. 93-cr-65, 1993 WL 738477, at

*2-3 (D. Minn. Dec. 3, 1993).[15]

    *Second*, the definition makes clear that the activities protected by the Clause

are those which are "an integral part of the deliberative and communicative

processes by which Members participate in committee and House proceedings."

*Eastland*, 421 U.S. at 504.  While these activities plainly include "delivering an

opinion, uttering a speech, [and] haranguing in debate," *Fields*, 459 F.3d at 10-11,

the courts have "not taken a literalistic approach in applying the privilege," *Gravel*,

408 U.S. at 617, and instead have broadly construed the Clause to include much

more.  For example, committee investigations and hearings are protected,

*Eastland*, 421 U.S. at 504; *Fields*, 459 F.3d at 10-11, as is information gathering

---

[15]  Such "other matters" also include (i) Rulemaking Clause activities, U.S. Const.
art. I, § 5, cl. 2, *see, e.g.*, *Consumer's Union of U.S., Inc. v. Periodical
Correspondent's Ass'n*, 515 F.2d 1341, 1347-50 (D.C. Cir. 1975); *Cable News
Network v. Anderson*, 723 F. Supp. 835, 839-42 (D.D.C. 1989); (ii) Advice and
Consent Clause activities, U.S. Const. art. II, § 2, cl. 2, *see, e.g.*, *Smith v. Eagleton*,
455 F. Supp. 403, 405 (W.D. Mo. 1978) (treaty ratification); and (iii) activities in
furtherance of the Impeachment Clauses, U.S. Const. art. I, § 2, cl. 5 and § 3, cl. 6,
*see, e.g.*, *In re Request for Access to Grand Jury Materials*, 833 F.2d 1438, 1446
(11th Cir. 1987) ("The Speech [or] Debate Clause prevents us from questioning
Congress about actions taken in the impeachment process."); *Hastings v. U.S.
Senate, Impeachment Trial Comm.*, 716 F. Supp. 38, 42 (D.D.C.), *aff'd sub nom.
Nixon v. U.S. Senate*, 887 F.2d 332 (D.C. Cir. 1989).

because "'[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change,'" *Eastland*, 421 U.S. at 504 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)).  Drafting and introducing bills and resolutions, voting on bills and resolutions, negotiating with other Members regarding bills and resolutions, and preparing and using legislative reports also are protected, *see, e.g.*, *Fields*, 459 F.3d at 10-11; *Jewish War Veterans of the U.S.A., Inc. v. Gates*, 506 F. Supp. 2d 30, 53 (D.D.C. 2007), as are preparations for such activities, *see, e.g.*, *Gravel*, 408 U.S. at 629 (Clause covers "any act . . . performed by the Senator, or by his aides . . . in preparation for the subcommittee hearing"); *Johnson*, 383 U.S. at 173-76 (Clause protects preparation of speech delivered by Member on House floor); *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 861 (D.C. Cir. 1988) ("preparation of the statement for publication in the subcommittee report was part of the legislative process").

Finally, the Clause protects "'against inquiry into . . . the motivation for [legislative] acts.'"  *Helstoski*, 442 U.S. at 489 (quoting *United States v. Brewster*, 408 U.S. 501, 525 (1972)); *see also Johnson*, 383 U.S. at 180 (whether legislative activity improperly motivated "is precisely what the Speech or Debate Clause generally forecloses from executive and judicial inquiry"); *id*. at 184-85 (inquiry

into Member's motives for engaging in legislative activities "necessarily contravenes the Speech or Debate Clause").

> 3.  *Protections of the Clause.*

The Speech or Debate Clause affords three broad protections to those to whom it applies.  Most importantly for purposes of this case, the Clause provides an immunity from suits that are predicated on conduct that falls within the "legislative sphere," even though "the[] conduct, if performed in other than legislative contexts, would . . . be unconstitutional or otherwise contrary to criminal or civil statutes."  *McMillan*, 412 U.S. at 312-13 (quotation marks omitted).[16]

Importantly here, the Clause's protections apply "not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself."  *Gravel*, 408 U.S. at 618; *see also Eastland*, 421 U.S. at 507 (affirming dismissal of claims against Senate

---

[16]  The Clause also provides (i) a non-disclosure privilege which protects Members from having their legislative materials seized, and from being compelled to testify about their legislative activities or to produce legislative records, *see, e.g.*, *Gravel*, 408 U.S. at 615-16; *Helstoski*, 442 U.S. at 484-86; *United States v. Rayburn House Office Bldg.*, 497 F.3d 654, 660 (D.C. Cir. 2007), *cert. denied*, 128 S. Ct. 1738 (2008); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 420-21 (D.C. Cir. 1995); *MINPECO,* 844 F.2d at 859-61; and (ii) a non-evidentiary use privilege that bars civil plaintiffs and prosecutors from using "information as to a [protected] act" to advance their cases against those to whom the Clause applies, *see, e.g.*, *Helstoski*, 442 U.S. at 489, 490; *Johnson*, 383 U.S. at 173.

subcommittee, individual Senators, and subcommittee's Chief Counsel: "[The Court] draw[s] no distinction between the Members and the Chief Counsel . . . . '[T]he day-to-day work of such aides is so critical to the Members' performance that they must be treated as (the Members') alter egos.'" (quoting *Gravel*, 408 U.S. at 616-17)); *MINPECO*, 844 F.2d at 862 (Speech or Debate Clause protected staff activities undertaken in connection with subcommittee investigation).

The Supreme Court draws no distinction among the three protections provided by the Clause. Rather, it has stated unequivocally that when the Clause applies, its protections are "absolute." *Eastland*, 421 U.S. at 501, 503, 509-10 & n.16; *see also Gravel*, 408 U.S. at 623 n.14.

### B. Appellees Are Immune from Suit Because Congressman Rangel's Claims Are Predicated Entirely on Speech-or-Debate-Protected Conduct.

All of the alleged appellee conduct upon which Congressman Rangel's suit is predicated directly concerns the Committee's exercise of the House's Discipline Clause authority. And all of that alleged conduct falls squarely within the "legislative sphere" for Speech or Debate purposes because, as discussed above, the Discipline Clause authority is "[an]other matter[] which the Constitution places within the jurisdiction of either House." *See supra* Argument, Part I.A.2.

Accordingly, all eleven appellees are absolutely immune from suit, as the district court correctly determined. *See* Mem. Op. at 36-48 (JA 426-38).

24

1.     *Appellees Chisam, Kim, and Sovereign*.

Congressman Rangel's claims against Mr. Chisam, Ms. Kim, and

Ms. Sovereign rest on actions they allegedly took as Ethics Committee staffers in

connection with the Rangel-ASC.  In particular, the Congressman alleges that

Ms. Kim and Ms. Sovereign communicated orally and in writing with certain

Rangel-ASC Members about the Rangel disciplinary matter, Compl. ¶¶ 18, 20

(JA 21-22), and that Mr. Chisam failed to notify Congressman Rangel "of what

had occurred prior to the Sanction Hearing," i.e., of the existence of the alleged

Kim/Sovereign communications, *id*. ¶ 14 (JA 19-20).

The protections of the Speech or Debate Clause – including the immunity

protection – apply to Mr. Chisam, Ms. Kim, and Ms. Sovereign here because, like

the Chief Counsel in *Eastland*, all three were acting in their capacities as aides to

the Committee at all pertinent times, as the Complaint itself makes clear, *see id*.

¶¶ 14-20 (JA 19-22), and because their alleged actions – communicating with

Rangel-ASC Members in preparation for the subcommittee hearing, and not

informing Congressman Rangel about those communications – plainly "would

be . . . protected legislative act[s] if performed by the [Committee it]self," *Gravel*,

408 U.S. at 618; *see supra* Argument, Part I.A.3.

2.     *Appellees McCaul, Conaway, Dent, and Harper*.

Congressman Rangel's claims against Congressman McCaul rest on actions the latter is alleged to have taken as Ranking Member of the Rangel-ASC, in particular, that he "received and retained" from Ms. Kim and Ms. Sovereign the communications referred to above.  Compl. ¶ 22 (JA 22).  Congressman Rangel's claims against Congressmen Conaway, Dent, and Harper also are predicated on actions they are alleged to have taken as Rangel-ASC Members, in particular, that they received the same Kim/Sovereign communications, and that they did not disclose those communications to others.  *See id*. ¶¶ 24-26 (JA 22-24).

These four Members are immune from suit here because their alleged receipt of information from staff in connection with the Rangel disciplinary proceedings – and specifically in preparation for the Rangel-ASC hearing on November 15-16, 2010 – is self-evidently an activity at the core of the Committee's exercise of the House's Discipline Clause authority.  So too are the alleged decisions of Congressmen Conaway, Dent, and Harper to communicate or not communicate with fellow Members about those staff communications.  *See Gravel*, 408 U.S. at 629 (Clause applies to "preparation for the subcommittee hearing"); *see generally supra* Argument, Part I.A.2.

3.     *Appellees Lofgren and Bonner.*

Congressman Rangel's claims against Congresswoman Lofgren and Congressman Bonner rest on actions those Members allegedly took as the Chair and Ranking Member, respectively, of the Ethics Committee – and, in the case of Congresswoman Lofgren, also as Chair of the Rangel-ASC – in connection with the Rangel disciplinary matter.  In particular, Congressman Rangel alleges that Congresswoman Lofgren and Congressman Bonner made statements (i) to the Committee at the Sanction Hearing, and (ii) to the House prior to the floor vote on the censure resolution.  *See* Compl. ¶¶ 12-13 (JA 18-19).

But statements to fellow Members, in the course of formal committee and House proceedings, are Speech or Debate protected, by definition.  *See* U.S. Const. art. I, § 6, cl. 1 ("for *any Speech* . . . in [the] House . . . ." (emphasis added)); *see also, e.g.*, *Gravel*, 408 U.S. at 616 ("Senator . . . may not be made to answer . . . for the events that occurred at the subcommittee meeting."); *Johnson*, 383 U.S. at 184-85 (Clause protected Member's "motives underlying the making of the speech [on the floor of the House] and upon its contents").

Accordingly, Congresswoman Lofgren and Congressman Bonner also are immune from suit here.

27

4.    *Appellees Boehner and Haas*.

Finally, with respect to appellees Boehner and Haas – the Speaker and Clerk of the House, respectively – Congressman Rangel does not allege that they have done anything.  Instead, he says that they are "essential to effectuate relief," Compl. ¶ 11 (JA 18), because they allegedly can "cause to be removed from The Journal of the House's Proceedings any reference to the fact that [Congressman Rangel] had been censured, and to remove any other records of the House reflecting that [Congressman Rangel] had been censured," *id*. ¶ 108 (JA 42); *see also* Rangel Br. at 39 (similar).

Maintenance of the House Journal – like the House's Discipline and Rulemaking Clause responsibilities, *see supra* Argument, Part I.A.2 – plainly is one of those "'other matters which the Constitution places within the jurisdiction of either House,'" *Eastland*, 421 U.S. at 504 (quoting *Gravel*, 408 U.S. at 625), to which the protections of the Speech or Debate Clause apply fully.  *Cf. Marshall Field & Co. v. Clark*, 143 U.S. 649, 671 (1892) (matters concerning Journal of House and Senate "left to the discretion of the respective houses of [C]ongress"). Logically and necessarily, therefore, the immunity component of the Speech or Debate Clause applies to otherwise-protected actions that Congressman Rangel

seeks to force the Speaker and Clerk to take in the future, just as it does to the past predicate conduct of the other appellees.[17]

### C. Congressman Rangel's Allegations of Appellee Wrongdoing Do Not Vitiate the Protections of the Speech or Debate Clause.

Congressman Rangel's sole response on the Speech or Debate issue is that appellees are not immune because he has alleged that their actions "violat[ed] . . . the Rules of the House Committee on Ethics." Rangel Br. at 32 (citing no authority). However, such allegations of appellee wrongdoing are not relevant.

What matters for purposes of Speech or Debate Clause analysis is the actual conduct alleged, fairly and neutrally considered, and stripped of characterizations

---

[17] Congressman Rangel has compounded his Speech or Debate woes by acknowledging that, if left to his own devices, he would attempt to

- take discovery concerning protected matters, *see, e.g.*, Compl. ¶¶ 40-42 (JA 28-29); Litigation Hold Notice (May 20, 2013), attached as Ex. 8 to Defs.' Mot. to Dismiss (ECF No. 14-10); Rangel Br. at 40-45 (listing 40 questions he would ask Mr. Chisam); and

- use protected matters as evidence, *see, e.g.*, Compl. ¶ 32 (JA 25-26) ("Rep. McCaul's statements that all Members of the [Rangel-ASC] were to act as 'judges' is clearly admissible, as well as the opening statements of Chair Lofgren and the misleading statements made by then Chair Lofgren and Ranking Member Bonner on or about November 18, 2010 concerning how the pre-vote proceedings had been conducted.").

The former would run afoul of the Clause's non-disclosure privilege, and the latter would run afoul of the non-evidentiary use protection. *See supra* Argument, Part I.A.3.

about the lawfulness of, propriety of, or motivation for that conduct.  This is so

because the Clause's immunity and other protections apply to all activities "within

the 'legislative sphere,' . . . even though the[] conduct, if performed in other than

legislative contexts, would in itself be unconstitutional or otherwise [unlawful]."

*McMillan*, 412 U.S. at 312-13 (quoting *Gravel*, 408 U.S. at 624-25).

As the Supreme Court explained in *Eastland*, in rejecting the same theory

Congressman Rangel advances here:

> If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it. . . . [Plaintiffs'] theory seems to be that once it is alleged that First Amendment rights may be infringed by congressional action the Judiciary may intervene to protect those rights . . . .  That approach, however, ignores the absolute nature of the speech or debate protection and our cases which have broadly construed that protection.

421 U.S. at 508-10 (footnote omitted); *see also Johnson*, 383 U.S. at 184-86

(reversing Member's bribery conviction where his legislative activities were used

against him at trial, notwithstanding that Member had been charged with

commission of federal crime); *Porteous v. Baron*, 729 F. Supp. 2d 158, 165

(D.D.C. 2010) (rejecting argument that congressional defendants' conduct not

legislative, notwithstanding plaintiff's assertion that their conduct violated his Fifth

Amendment rights); *Anderson*, 723 F. Supp. at 841 ("[A]n allegation [that the

30

legislative actor violated the plaintiff's constitutional rights] is insufficient to overcome the broad coverage of the Speech or Debate Clause.").

In any event, the rule violation argument is wrong on its own terms. *First*, the only rule Congressman Rangel says has been violated is Committee Rule 25. *See* Rangel Br. at 29 (suggesting that unnamed appellees violated that rule by failing to furnish him with "information that Chisam learned of"). Committee Rule 25 provides for the disclosure of certain exculpatory evidence – defined as "evidence or information that is substantially favorable to the respondent *with respect to the allegations or charges before an investigative or adjudicatory subcommittee*," Rule 25, 111th Comm. Rules (ADD-010) (emphasis added) – in disciplinary adjudications. But that rule is not applicable on its face to the "information that Chisam learned of," Rangel Br. at 29, because that information concerned communications that allegedly occurred *after* the SAV already had issued, and because the information does not bear one way or the other on whether "the allegations or charges" in the SAV were true. *See supra* pp. 14-15 (discussing allegations in Chisam Memorandum).

*Second*, because Congressman Rangel did not raise his Rule 25 argument below, *see* Mem. Op. at 23 (JA 413) ("[Congressman Rangel] maintains that defendants violated unspecified House Rules . . . ."); *id.* at 21, 44 n.22 (JA 411,

31

434) (similar), the argument has been waived, *see, e.g.*, *Bain v. MJJ Prods., Inc.*, --- F.3d ----, No. 12-7061, 2014 WL 1887370, at *6 (D.C. Cir. May 13, 2014).[18]

## II.      Congressman Rangel Lacks Article III Standing.

 "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  When the plaintiff lacks standing, the court lacks subject matter jurisdiction.  *See, e.g.*, *Hickman v. U.S. Dep't of Defense*, 389 F. App'x 1, 1 (D.C. Cir. 2010) (per curiam) (citing *Lujan*, 504 U.S. at 560-61); *Hurt v. Am. Governors & Conference of Mayors*, 210 F. App'x 15 (D.C. Cir. 2006) (same).

"[T]he party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998); *accord Lujan*, 504 U.S. at 561; *City of Waukesha v. E.P.A.*, 320 F.3d 228, 233 (D.C. Cir. 2003).  To meet his burden here, Congressman Rangel must establish three elements:

> *First*, [he] must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or

---

[18]  The Complaint asserts that all Speech or Debate protections were "waived when the House chose to broadcast all proceedings on public television."  Compl. ¶ 32 (JA 25).  The district court properly rejected that argument, *see* Mem. Op. at 45-48 (JA 435-38), and the Congressman did not renew it on appeal.  Accordingly, his "waiver" argument has itself been waived.  *See, e.g.*, *Catawba Cnty., N.C. v. E.P.A.*, 571 F.3d 20, 38 (D.C. Cir. 2009); *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1160 (D.C. Cir. 2002).

> imminent, not conjectural or hypothetical. *Second*, there
> must be a causal connection between the injury and the
> conduct complained of – the injury has to be fairly
> traceable to the challenged action of the defendant[s], and
> not the result of the independent action of some third
> party not before the court. *Third*, it must be likely, as
> opposed to merely speculative, that the injury will be
> redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (emphases added; quotation marks, citations, ellipsis, footnote, and brackets omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Grocery Mfrs. Ass'n v. E.P.A.*, 693 F.3d 169, 174 (D.C. Cir. 2012).

Congressman Rangel's burden here is "*especially rigorous*" because "reaching the merits of [this] dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government" was inappropriate. *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997) (emphasis added). And indeed he has not met his burden, as the district court correctly concluded. *See* Mem. Op. at 8-20 (JA 398-410).

## A. Congressman Rangel Has Not Carried His Burden of Establishing an Article III Injury-in-Fact.

The district court liberally construed the Complaint as asserting four separate injuries-in-fact – "[i] reputational harm resulting from the censure; [ii] a loss of status on House Ways and Means subcommittees; [iii] political exploitation of the censure; and [iv] an amorphous due process injury based on the conduct of

certain defendants during the events leading up to his censure," Mem. Op. at 9

(JA 399) – each of which the district court rightly rejected, *see id*. at 9-20 (JA 399-

410).[19]

On appeal, Congressman Rangel relies solely on the last of these four

possible injuries, which he now recasts as injury to his expectations.  *See, e.g*.,

Rangel Br. at 20 (Congressman "suffered an injury in fact to [a] protectable

property right, that is the legitimate expectation and promise the House Committee

on Ethics made to his entitlement as written in the FOREWORD to the House

Committee on Ethics Rules"); *id.* at 18 (Congressman had "'expectation' of the

express promise made by the House Committee on Ethics that it will adhere to the

principles set forth in the FOREWORD, which includes the promise to afford [the

Congressman] impartiality and a fair procedural framework with respect to its

proceedings [against him]").

The argument that Congressman Rangel had expectations arising out of the

Foreword to the Committee Rules is particularly feeble.  *First*, the Foreword is not

even an operative part of the rules.  *See, e.g*., *Nat'l Wildlife Fed'n v. E.P.A.*, 286

F.3d 554, 569 (D.C. Cir. 2002) ("The preamble to a[n] [agency] rule is not more

---

[19]  A liberal construction of the Complaint arguably contravened the "closer
scrutiny" required of factual allegations in the Rule 12(b)(1) context.  *See, e.g.*,
*Kingman Park Civic Ass'n v. Gray*, --- F. Supp. 2d ----, No. 13-cv-990, 2014 WL
1920496, at *3 (D.D.C. May 14, 2014) (quotation marks omitted).

binding than a preamble to a statute."); *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999) ("[T]he language in the preamble of a statute is not an operative part of the statute . . . ." (quotation marks omitted)).

     *Second*, the Congressman's claimed expectations injury is, in substance and effect, *identical* to his underlying merits claim that his due process rights were violated. *See, e.g.*, Compl. at 6 (JA 14) (asserting claim for "violations of [Congressman Rangel's] Due Process rights and his other fundamental constitutional rights by a majority of Members of the Committee charged with recommending a sanction to the House, where . . . prior proceedings had [not] been conducted in accordance with procedural rules and the protections of [the Congressman's] constitutional rights  . . . ."); Rangel Br. at 10-11 (appellees "contravened their promise to act as fair and impartial fact-finders comporting with the pledge in the FOREWORD to the Committee Rules, and with the observance of constitutional restraints and the protection of Due Process and fundamental constitutional rights"); *id.* at 37 ("[T]he House Ethics Committee expressly made clear in the FOREWORD to its Rules the process that [Congressman Rangel] could expect and truly defined the essentials of Due Process.").

     Supreme Court and Circuit precedent foreclose this circular theory of injury. "'Only *after* finding the deprivation of a protected interest do[es] [the Court] look to see if the [government's] procedures comport[ed] with due process.'" *Gen.*

*Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) (emphasis added)

(quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)); *Whitmore v.*

*Arkansas*, 495 U.S. 149, 155 (1990) ("Our threshold inquiry into standing in no

way depends on the merits of the petitioner's contention that particular conduct is

illegal." (citations, quotation marks and brackets omitted)); *Valley Forge Christian*

*Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 490

n.26 (1982) ("[W]e [do not] recognize standing premised on an 'injury' consisting

solely of an alleged violation of a 'personal constitutional right' . . . ."). As the

district court aptly put it: "It is the deprivation of a liberty or property interest

itself that triggers procedural due process requirements, and that deprivation is the

Article III injury." Mem. Op. at 19 (JA 409) (citation omitted).

Here, Congressman Rangel fails to satisfy the Article III injury-in-fact

requirement because he has not identified any actual liberty or property interest of

which he has been deprived.[20]

---

[20] The Congressman suggests that the district court erred in concluding that he
"was asserting as his sole property interest his loss of reputation." Rangel Br.
at 18. If that passing reference was intended to preserve an argument that the
Congressman suffered an Article III reputational injury, it fails. "We have long
held that this court does not normally consider points not asserted with sufficient
precision to indicate distinctly the party's thesis." *Payne v. D.C. Gov't*, 722 F.3d
345, 354 (D.C. Cir. 2013) (quotation marks omitted); *see also Rempfer v.*
*Sharfstein*, 583 F.3d 860, 868 n.7 (D.C. Cir. 2009) ("[A]rguments . . . raised only
summarily, without explanation or reasoning, . . . are waived." (quotation marks
omitted)); *N.Y. Rehab. Care Mgmt., LLC v. N.L.R.B.*, 506 F.3d 1070, 1076 (D.C.

(*Continued . . . .*)

**B.     The Congressman Has Not Carried His Burden of Establishing that Appellees Caused Any Injury that Might Be Cognizable for Purposes of Article III.**

As discussed above, this suit effectively is a collateral attack on the House's censure of Congressman Rangel.  It follows that any conceivably cognizable Article III injury would be a function of that censure.

But the censure resulted from a vote by the *entire* House of the 111th Congress.  While the seven Member appellees had the ability to cast votes, they could not, by themselves, bring about Congressman Rangel's censure.  "Power is not vested in any one individual [Member], but in the aggregate of the members who compose the body, and its action is not the action of any separate member or number of members, but the action of the body as a whole."  *Raines*, 521 U.S. at 829 n.10 (quoting *United States v. Ballin*, 144 U.S. 1, 7 (1892)).  And, needless to say, Ms. Haas, Mr. Chisam, Ms. Kim, and Ms. Sovereign did not even have the ability to cast votes.

Consequently, any injury Congressman Rangel suffered is not "fairly traceable" to appellees but instead was "th[e] result [of] the independent action of some third party [or parties] not before the court," *Lujan*, 504 U.S. at 560

---

Cir. 2007) (similar); *In re Contempt Finding in United States v. Stevens*, 663 F.3d 1270, 1275 n.2 (D.C. Cir. 2011) (similar); *United States v. Saani*, 650 F.3d 761, 763 n.1 (D.C. Cir. 2011) (similar); *Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008) (similar).

(quotation marks omitted), i.e., the House of Representatives for the 111th

Congress, a body that, in any event, no longer exists, *see Eastland*, 421 U.S. at 512

("[T]he House . . . is not a continuing body . . . ."); *Gojack v. United States*, 384

U.S. 702, 706 n.4 (1966) ("Neither the House of Representatives nor its

committees are continuing bodies.").[21]

Moreover, even if appellees' conduct were viewed as some sort of catalyst

for the resulting full House censure vote, Congressman Rangel still would not

satisfy Article III because his causation theory then would turn "on speculation

about 'the unfettered choices made by independent actors not before the court'"

(i.e., the Members of the House of Representatives for the 111th Congress).

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 n.5 (2013) (quoting *Lujan*,

504 U.S. at 562).  As the district court correctly noted in rejecting this argument:

> [Congressman] Rangel's argument is [that] if he had
> been notified that the staffers and certain members had
> had improper ex parte communications, he would not
> have left the hearing and he would have moved to
> dismiss the proceedings; if he had moved to dismiss, the
> Committee would have granted his motion because of the
> misconduct; if the Committee had instead denied his
> motion, the House still would not have censured him; if
> the House had not censured him, he would not have

---

[21]  *See also Common Cause v. Biden*, 748 F.3d 1280, 1284-85 (D.C. Cir. 2014)
(holding, in suit challenging Senate's cloture vote rule, that 100 voting Members of
Senate, because "absent third part[ies]" – rather than defendants Vice President, in
his capacity as President of Senate, Secretary of Senate, Senate Parliamentarian,
and Senate Sergeant-at-Arms – caused bills at issue to fail in Senate).

suffered any reputational harm based on his own
misconduct . . . and so on.  This type of speculative and
attenuated causation is not sufficient under Article III.

Mem. Op. at 11 (JA 401).[22]

### C.    The Congressman Has Not Carried His Burden of Establishing that Any Injury that Might Be Cognizable for Purposes of Article III Would Be Redressed by a Favorable Judicial Decision.

"The redressability inquiry poses a simple question:  '[I]f plaintiffs secured the relief they sought, would [it] redress their injury?'"  *Wilderness Soc'y v. Norton*, 434 F.3d 584, 590 (D.C. Cir. 2006) (quoting *Mtn. States Legal Found. v. Glickman*, 92 F.3d 1228, 1233 (D.C. Cir. 1996)).  The answer here is "no."

*First*, the declaration that the Congressman seeks, *see* Compl. ¶ 100 (JA 40); Rangel Br. at 39, will not remediate the House's censure of him (or, for that matter, his asserted expectation injury).

*Second*, an injunction requiring appellees "to take all necessary steps to vacate, strike and remove the recording of censure, as voted upon by the House and as set forth in the Journal," Compl. ¶ 103 (JA 41), would be meaningless. Ms. Haas, Mr. Chisam, Ms. Kim, and Ms. Sovereign are not Members of the

---

[22] *See also Judicial Watch, Inc. v. U.S. Senate*, 432 F.3d 359, 362 (D.C. Cir. 2005) (where plaintiff claimed that Senate filibuster rules created court delays that affected its business of litigating in support of open government, finding no standing because "Judicial Watch ha[d] failed to substantiate either essential link – between Rule XXII and delayed vacancy filling, and between delayed vacancy filling and delayed adjudication").

House, and Congressman Bonner was but no longer is.  Thus, these five appellees
have zero ability to cast votes that would be required to "vacate, strike [or] remove
the recording of censure."  And, while the six remaining Member appellees do
have the ability to cast votes, such an injunction would be equally meaningless as
to them because only the full House itself has the ability to "vacate, strike and
remove the recording of censure."  *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 615
(1989) (no standing where redressability "depends on the unfettered choices made
by independent actors not before the courts and whose exercise of broad and
legitimate discretion the courts cannot presume either to control or to predict");
*Wilderness Soc'y*, 434 F.3d at 591 (similar).

> *Third*, Congressman Rangel's request for an order requiring the Speaker and
Clerk "to cause to be removed from The Journal of the House's Proceedings, any
reference to the fact that Plaintiff had been censured," Compl. ¶ 108 (JA 42),
would remedy nothing.  Leaving aside the constitutional crisis that would be
precipitated if the Court purported to direct the Speaker and/or Clerk to edit in
some manner the official Journal of the House's Proceedings, *see infra* Argument,
Part III.B, the Journal for the time period that includes December 2, 2010, already
has been printed and copies already have been widely distributed, *see supra* p. 4.
The order Congressman Rangel seeks would not change that reality.

40

*Finally*, Congressman Rangel's suggestion that he might be afforded relief in the form of having 40 questions put to Mr. Chisam, *see* Rangel Br. at 40-45, is silly. Aside from the fact that putting questions to Mr. Chisam would not remediate anything, the Complaint does not request that relief, and the Congressman did not raise this "argument" below. Accordingly, the 40-questions-as-relief point has been waived. *See supra* pp. 31-32 and note 18.

## III.    Congressman Rangel's Suit Presents Non-Justiciable Political Questions.

The political question doctrine is "essentially a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 217 (1962). The doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986); *see also United States v. Munoz-Flores*, 495 U.S. 385, 394 (1990) ("doctrine is designed to restrain the Judiciary from inappropriate interference in the business of the other branches of Government").

"That some governmental actions are beyond the reach of the courts reflects the Constitution's limitation of the 'judicial power of the United States' to 'cases' or 'controversies.'" *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 840 (D.C. Cir. 2010) (quoting U.S. Const. art. III, § 2). "It is therefore familiar

41

learning that no justiciable 'controversy' exists when parties seek adjudication of a political question . . . ." *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007).

A claim presents a political question if it involves:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; *or* [2] a lack of judicially discoverable and manageable standards for resolving it; *or* [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; *or* [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; *or* [5] an unusual need for unquestioning adherence to a political decision already made; *or* [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker*, 369 U.S. at 217 (emphases added). "'To find a political question, [this Court] need only conclude that *one* [of these] factor[s] is present, not all.'" *El-Shifa*, 607 F.3d at 841 (emphasis added) (quoting *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005)).

Here, the political question doctrine precludes this Court from considering the merits of Congressman Rangel's claims because the Discipline and Journal Clause authorities are textually committed to the House, and because judicial review of the House's internal disciplinary proceedings would manifest a profound disrespect for the Legislative Branch of the federal government. *See* Mem. Op. at 20-36 (JA 410-26).

42

### A.    The Discipline Clause Authority Is Textually Committed to the House Alone.

1.  The power to "punish . . . Members for disorderly Behaviour" is textually committed to "Each House" of Congress.  U.S. Const. art. I, § 5, cl. 2.  That authority belongs *exclusively* to the two houses of Congress:

> The process of disciplining a Member in the Congress . . . is not surrounded with the panoply of protective shields that are present in a criminal case.  An accused Member is judged by no specifically articulated standards and is at the mercy of an almost unbridled discretion of the charging body . . . *from whose decision there is no established right to review*.

*Brewster*, 408 U.S. at 519 (emphasis added and footnote omitted); *see also Haan v. Noem*, No. 13-cv-1009, 2013 WL 5701638, at *2 (D.S.D. Oct. 17, 2013) ("The authority to discipline Members of the House and to remove them from office is textually committed by the Constitution to each house of congress, and not the judiciary.").[23]

---

[23]  *See also* H. Rep. No. 63-570 at 1 (1914) (Discipline Clause power is "full and plenary," and "may be enforced by summary proceedings.  It is discretionary in character . . . [and] restricted by no limitation except in the case of expulsion the requirement of the concurrence of a two-thirds vote."); *cf. Morgan v. United States*, 801 F.2d 445, 447 (D.C. Cir. 1986) (textual commitment to "[e]ach House" of Congress of authority to "be the Judge of the Elections, Returns and Qualifications of its own Members," U.S. Const. art. I, § 5, cl. 1, deprived judiciary of jurisdiction to consider suit that challenged House's determination that one candidate in disputed congressional election had been lawfully elected to House).

The Discipline Clause power is "'rooted in the judgment of the House as to what [is] necessary or appropriate for it to do to assure the integrity of its legislative performance and its institutional acceptability to the people at large as a serious and responsible instrument of government.'"  Lewis Deschler, Deschler's Precedents of the U.S. House of Representatives, H. Doc. 94-661, 94th Cong. 2d Sess., vol. 3, ch. 12, § 13 (1979) ("Deschler's Precedents") (quoting *Powell v. McCormack*, 395 F.2d 577, 607 (D.C. Cir. 1968) (McGowan, concurring), *rev'd on other grounds* 395 U.S. 486 (1969)).  Accordingly, the House administers its Discipline Clause responsibilities so as to promote and protect the integrity and dignity of the institution and its proceedings, as Congressman Rangel himself has acknowledged:  "[T]hese rules are not there to punish; they are there to guide the Members, to protect the character and the integrity of this Congress. . . . [Members] have a responsibility to do just that."  Ethics Comm. Rep., vol. I, at 641 (Rep. Rangel).

Because Congressman Rangel's suit, in both substance and effect, seeks collaterally to attack the discipline imposed on him by the House on December 2, 2010, it presents a political question that requires dismissal of the suit, as the district court correctly found.

2.  Congressman Rangel cites no case that has purported to review or restrain in any way Congress' exercise of its Discipline Clause authority.  Instead,

he contends – relying solely on *Nixon v. United States*, 506 U.S. 224 (1993) – that

the Discipline Clause is not textually committed to the House alone because it does

not contain the word "sole" or operate as a check on other branches of government,

as does the Impeachment Trial Clause at issue in *Nixon*. *See* Rangel Br. at 25-26.

However, nothing in *Nixon* suggests that the political question doctrine applies

only to constitutional provisions that contain the word "sole" and/or that operate as

a check on the other branches.[24]  Indeed, numerous cases have dismissed claims on

textual constitutional commitment grounds even though the pertinent constitutional

---

[24]  In *Nixon*, an impeached and Senate-convicted federal judge sought to invalidate his conviction on the ground that Senate Rule XI violated the Impeachment Trial Clause, U.S. Const. art. I, § 3, cl. 6,  by allowing a Senate *committee* to hear evidence in impeachment cases and then report to the full Senate.  *See* 506 U.S. at 226.  The Supreme Court held that the claim was a non-justiciable political question because, among other things, the Impeachment Trial Clause was textually committed to a coordinate branch of government.  *See id.* at 229-36.  While the Court considered it significant that the Clause contains the word "sole," *see id.* at 230, and that the impeachment/removal power is a check on the judiciary, *see id.* at 235-36, the Court also rested its judgment on (i) the fact that the Clause assigns the impeachment trial authority to the Senate (separate and apart from the word "sole"), *id.* at 229; (ii) the history and contemporary understanding of the impeachment provisions, *id.* at 233-34; (iii) the fact that the impeachment power is divided between the House and Senate, *id.* at 235-36; (iv) the absence of judicially manageable standards for resolving the issue, *id*. at 229-30; and (v) practical, political considerations, *id.* at 236 ("[O]pening the door of judicial review to the procedures used by the Senate . . . would expose the political life of the country to months, or perhaps years, of chaos." (citations and quotation marks omitted)).

provision neither contained the word "sole" nor operated as a check on other branches.[25]

Congressman Rangel also says that the Court may review his censure because courts on occasion have reviewed House Rules for compliance with constitutional requirements.  Rangel Br. at 26.  While that is true, it also is beside the point since the Congressman "is not challenging [the Discipline Clause] power and is not questioning the fairness of the Committee Rules themselves."  *Id.* at 24.

### B.    The Journal Clause Authority Is Textually Committed to the House Alone.

The principal relief Congressman Rangel seeks is modification of the House Journal.  *See* Compl. ¶¶ 103, 108 (JA 41-42).  However, the Constitution textually commits to "Each House" of Congress the responsibility to "keep a Journal of its Proceedings."  U.S. Const. art. I, § 5, cl. 3.  While the Constitution specifies certain

---

[25] *See, e.g., Luther v. Borden*, 48 U.S. (7 How.) 1, 42 (1849) (holding non-justiciable suit brought pursuant to Guarantee Clause, U.S. Const. art. IV, § 4, because responsibility to guarantee republican form of government textually committed to political branches); *Gonzalez-Vera v. Kissinger*, 449 F.3d 1260, 1262-63 (D.C. Cir. 2006) (claims involving foreign policy and national security non-justiciable because textually committed to political branches); *Schneider*, 412 F.3d at 194 (same); *Harrington v. Bush*, 553 F.2d 190, 214 (D.C. Cir. 1977) ("[T]he judiciary must take special care to avoid intruding into a constitutionally delineated prerogative of the Legislative Branch." (citing Rulemaking Clause)); *Common Cause v. Biden*, 909 F. Supp. 2d 9, 27-30 (D.D.C. 2012) (challenge to Senate Cloture Rule non-justiciable because rulemaking authority textually committed to Legislative Branch and no separately identifiable provision of Constitution limits rulemaking power as exercised by Senate in its Cloture Rule), *aff'd on other grounds*, 748 F.3d 1280 (D.C. Cir. 2014).

information that must be included in the Journals – *see, e.g.*, *id.* ("[T]he Yeas and Nays of the Members of either House on any question shall, at the Desire of one fifth of those Present, be entered on the Journal."); *id.* art. I, § 7, cl. 2 (President's "Objections" to bills "shall [be] enter[ed] at large on [House or Senate] Journal") – it otherwise leaves to "Each House" the authority to determine the content of its Journal.[26]   And because matters relating to the Journal are "left to the discretion of the respective houses of congress," *Marshall Field*, 143 U.S. at 671, the decision to include or remove any matters not constitutionally specified necessarily lacks "judicially discoverable and manageable standards."  *Baker*, 369 U.S. at 217.

Accordingly, the district court correctly held that "because the Constitution vests broad discretion as to the House Journal in the House itself . . . Rangel's desired relief involves a political question and the Court must dismiss his claims." Mem. Op. at 36 (JA 426).  The Congressman effectively has conceded this point by not addressing it below or challenging the district court's ruling here.  *See, e.g.*,

---

[26]  Beyond the constitutionally required components of the Journal, the House has, by virtue of its constitutional authority to "determine the Rules of its Proceedings," U.S. Const. art. I, § 5, cl. 2, required that its Journal contain records of other House activities, including the title or subject of each committee report, *see* Rule XIII.2(a), 111th House Rules (ADD-015); the reports of managers of a conference committee, *see* Constitution, Jefferson's Manual & Rules of the House of Representatives, H. Doc. No. 111-157, § 542 (2011), *available at* http://www.gpo.gov/fdsys/pkg/CDOC-111hdoc157/content-detail.html (last visited June 25, 2014); and discipline administered to Members, *see* 2 Hinds' Precedents § 1251.

*Catawba Cnty.*, 571 F.3d at 38; *Shankar v. ACS-GSI*, 258 F. App'x 344, 345 (D.C. Cir. 2007); *Hayes v. Dist. of Columbia*, 923 F. Supp. 2d 44, 49 (D.D.C. 2013).

    **C.**    **Judicial Resolution of Congressman Rangel's Claims Would Manifest a Lack of Respect Due a Coordinate Branch of the Federal Government.**

"In deference to the fundamental constitutional principle of separation of powers, the judiciary must take special care to avoid intruding into a constitutionally delineated prerogative of the Legislative Branch."  *Harrington*, 553 F.2d at 214; *see also Vander Jagt v. O'Neill*, 699 F.2d 1166, 1182 (D.C. Cir. 1983) (Bork, J., concurring) ("If the courts would not accept such invasions of their sphere, they ought not attempt the invasion of Congress's sphere . . . .").

1.  Because Congressman Rangel's suit collaterally attacks the House's censure vote, judicial review of the House's exercise of its Discipline Clause authority would require an invasive inquiry into internal House operations that lie at the very heart of the House's constitutional prerogatives.  Judicial intrusion into these matters would express a profound lack of respect for the House as a coordinate branch of the federal government.  *Cf. Brown v. Hansen*, 973 F.2d 1118, 1122 (3d Cir. 1992) (per curiam) ("Absent a clear command from some external source of law, we cannot interfere with the internal workings of the Virgin Islands Legislature 'without expressing lack of the respect due coordinate branches of government.'" (quoting *Baker*, 369 U.S. at 217)).

2.  Equally disrespectful would be judicially-dictated editing of the House

Journal.

The Rules of the House – in keeping with the Constitution, *see* U.S. Const.

art. I, § 5, cl. 3 ("Each *House* shall keep a Journal of its Proceedings" (emphasis

added)) – vest the ultimate authority over the Journal and its contents with the

entire House.  *See* Rule I.1, 111th House Rules (ADD-013) ("The Speaker's

approval of the Journal shall be deemed agreed to unless a Member, Delegate, or

Resident Commissioner demands a vote thereon.").  Requests for corrections or

amendments to the Journal must be offered either by motion or, more typically, are

effectuated by unanimous consent, and only may be for the Journal of the previous

legislative day.  *See* Deschler's Precedents, vol. 1, ch. 5, § 13.  Any attempt to alter

the Journal from a legislative day other than the previous legislative day – the very

relief Congressman Rangel seeks here – *requires* unanimous consent.  *See* Wm.

Holmes Brown, Charles W. Johnson, & John V. Sullivan, House Practice:  A

Guide to the Rules, Precedents and Procedures of the House, ch. 28, § 9, 112th

Cong. (1st Sess. 2011), *available at* http://www.gpo.gov/fdsys/pkg/ GPO-

HPRACTICE-112/pdf/GPO-HPRACTICE-112.pdf.

Accordingly, an injunction commanding the six current Member appellees

"to take all necessary steps to vacate, strike and remove the recording of censure,

as voted upon by the House and as set forth in The Journal," Compl. ¶ 103 (JA 41),

and/or an "Order or Writ in the nature of mandamus" requiring the Speaker and Clerk "to cause to be removed from The Journal of the House's Proceedings, any reference to the fact that Plaintiff had been censured," *id.* ¶ 108 (JA 42), would (i) conflict directly with the Rules and precedents of the House; (ii) place at least some of the appellees in the untenable position of being judicially required to take an action not authorized by the House and in violation of the House's Rules and precedents; and (iii) purport to compel the six Member appellees to take certain legislative actions and/or cast votes in a certain manner. That would be beyond disrespectful – it is unthinkable.

It also would be futile. Even if appellees were to disregard applicable House Rules and attempt to alter the Journal on their own – a circumstance imaginable only as a *theoretical* possibility – the House itself could block that effort.

In short, it is hard to imagine a situation more fraught with lack of respect for a coordinate branch than the road Congressman Rangel invites the judiciary to travel here. *Cf. Marshall Field*, 143 U.S. at 673, 676-77 (in suit challenging statute as improperly enacted, refusing to look to Journal's vote tally instead of signatures affixed to bill because doing so would invite "the spectacle of examination of journals by [the courts]" and thereby "subordinate[] the legislature, and disregard[] that coequal position in our system of the three departments of government"

50

(quotation marks omitted)).[27]  The Court should decline the Congressman's invitation.

3.  Congressman Rangel's (erroneous) contention that the Committee did not follow applicable House and/or Committee Rules, *see, e.g.*, Rangel Br. at 2, 6, 10-11, 13-15, 16-17, 37-38, does not change the political question analysis.  Judicial policing of the Committee's compliance with its own rules in the process of recommending that the House discipline one of its Members most certainly would "express[] [a] lack of the respect due [a] coordinate branch[] of [the] government." *Baker*, 369 U.S. at 217.

Indeed, in analogous circumstances, this Court and the district courts in this Circuit wisely have avoided the kind of judicial encroachment Congressman Rangel promotes here.  For example, in *Metzenbaum v. Federal Energy Regulatory Commission*, 675 F.2d 1282 (D.C. Cir. 1982), this Court refused on political question grounds to consider a claim by several Senators and Representatives that

---

[27]  *See also Pub. Citizen v. U.S. Dist. Court for D.C.*, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (describing *Marshall Field* as political question doctrine case: "[B]ecause the Court based its holding in part upon separation of powers concerns, the rule could be viewed as an application of the political question doctrine which is derived from Article III's controversy requirement" (citation and quotation marks omitted)); *Prevost v. Morgenthau*, 106 F.2d 330, 335 (D.C. Cir. 1939) ("It is manifest that no action that the President could take, no formality whatsoever, could force the House to make any particular entry upon its journal."); *cf. Vander Jagt*, 699 F.2d at 1173 ("[N]either we nor the Executive Branch may tell Congress what rules it must adopt.").

a particular public law was invalid because it allegedly was adopted in violation of

a particular parliamentary rule:

> To invalidate [the challenged public law] on the ground
> that it was enacted in violation of House rules would be
> to declare as erroneous the understanding of the House of
> Representatives of rules of its own making, binding upon
> it only by its own choice. We must assume that the
> House acted in the belief that its conduct was permitted
> by its rules, and deference rather than disrespect is due
> that judgment.

*Id.* at 1288.  And in *Vander Jagt v. O'Neill*, the court refused to tell the House how

to allocate committee seats under the Rules of the House:  "The actions of a caucus

in the House are governed by the House Rules.  Art. I, § 5, cl. 2 of the Constitution

confers upon the House the power 'to determine the Rules of its Proceedings.'

This textual commitment of the issue to the House would oust the Court's

jurisdiction . . . ."  524 F. Supp. 519, 521 (D.D.C. 1981) (citing *Baker*, 369 U.S. at

217), *aff'd on other grounds*, 699 F.2d 1166 (D.C. Cir. 1983); *accord Hastings*,

716 F. Supp. at 41 ("Courts in this District have regularly rejected other petitions

seeking judicial supervision of Congressional proceedings . . . .").

4.  The district court believed it could "avoid[] expressing disrespect for a

coordinate branch by [initially] focusing solely on whether [Congressman] Rangel

has asserted a viable constitutional violation," Mem. Op. at 30 (JA 420), i.e.,

whether appellees had "acted outside of the zone of their discretion under the

Discipline Clause," *id.* at 28 (JA 418) ("If they have not acted outside of that zone,

then the conduct of which Rangel complains is unreviewable because it is a political question . . . .").  Unsurprisingly, the district court found no such viable claim because Congressman Rangel failed to "identif[y] a constitutional right that the House ha[d] allegedly violated."  *Id.* at 30 (JA 420); *see also id.* at 31-32 (JA 421-22) (finding insufficiently pled due process claim).

While the district court reached the correct conclusion, its reasoning that it first had to determine "whether [Congressman] Rangel . . . asserted a viable constitutional violation," Mem. Op. at 30 (JA 420), is incorrect.  The district court's error started with its detour into an "examin[ation of] the adjacent Rulemaking Clause."  Mem. Op. at 22 (JA 412).  Congressman Rangel mounted no Rulemaking Clause challenge and, as the district court itself acknowledged, "judicial intervention in th[e Rulemaking Clause] context is only 'appropriate where rights of persons *other than members of Congress* are jeopardized by Congressional failure to follow its own procedures.'"  *Id.* (emphasis added) (quoting *Metzenbaum*, 675 F.2d at 1287); *accord Vander Jagt*, 699 F.2d at 1167, 1174-75 ("suit[s] by some members of Congress against others . . . raise[] separation-of-powers concerns"; affirming dismissal of suit by minority party Members claiming that "the House's method of allocating committee seats" "deprived them of Fifth Amendment due process and equal protection rights, as well as First Amendment rights of association and free speech").  Thus, the district

53

court simply had no occasion even to consider whether Congressman Rangel's allegations of rules violations "asserted a viable constitutional violation."

Moreover, the notion that the judiciary must render a Rule 12(b)(6) judgment as a predicate to making a Rule 12(b)(1) political question determination (an argument Congressman Rangel did not advance below and does not advance here) makes no sense analytically. A political question determination goes to the court's jurisdiction to reach the merits and, therefore, logically and necessarily precedes and is not contingent on a determination of whether a claim has been stated.

Accordingly, we ask this Court affirmatively to reject this aspect of the district court's reasoning.

## CONCLUSION

For all the foregoing reasons, this Court should affirm the district court's order of dismissal.

Respectfully submitted,

*/s/ Kerry W. Kircher*
KERRY W. KIRCHER, D.C. Bar # 386816
General Counsel
WILLIAM PITTARD, D.C. Bar # 482949
Deputy General Counsel
TODD B. TATELMAN, VA Bar # 66008
Assistant Counsel
MARY BETH WALKER, D.C. Bar # 501033
Assistant Counsel
ELENI M. ROUMEL, SC Bar # 75763
Assistant Counsel
ISAAC B. ROSENBERG, D.C. Bar # 998900
Assistant Counsel

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700
E-mail: Kerry.Kircher@mail.house.gov

*Counsel for Appellees John A. Boehner, Karen L.*
*Haas, Zoe Lofgren, Jo Bonner, Michael T.*
*McCaul, K. Michael Conaway, Charles W. Dent,*
*and Gregg Harper*


*/s/ John M. Faust*
John M. Faust, D.C. Bar # 433553

LAW OFFICE OF JOHN M. FAUST, PLLC
1325 G Street, N.W., Suite 500
Washington, D.C. 20005
(202) 449-7707
E-mail: john@johnfaustlaw.com

*Counsel for Appellee R. Blake Chisam*

55

*/s/ Richard A. Sauber*
Richard A. Sauber, D.C. Bar # 385070

ROBBINS, RUSSELL, ENGLERT, ORSECK,
   UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411L
Washington, D.C.  20006
(202) 775-4506
E-mail:  rsauber@robbinsrussell.com

*Counsel for Appellees C. Morgan Kim and Stacey*
*Sovereign*

June 26, 2014

56

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 13,184 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman type.

*/s/ Isaac B. Rosenberg*
Isaac B. Rosenberg, Assistant Counsel

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
(202) 225-9700

*Counsel for Appellees John A. Boehner, Karen L. Haas, Zoe Lofgren, Jo Bonner, Michael T. McCaul, K. Michael Conaway, Charles W. Dent, and Gregg Harper*

June 26, 2014

## CERTIFICATE OF SERVICE

I certify that on June 26, 2014, I filed the foregoing Brief of Appellees via the Court's CM/ECF system, which I understand caused delivery of a copy of the brief to all registered parties.

*/s/ Isaac B. Rosenberg*
Isaac B. Rosenberg

# ADDENDUM

***Rangel v. Boehner***, No. 14-5012 (D.C. Cir.)

# ADDENDUM

## Table of Contents

Constitutional Provisions

    U.S. Const. art. I, § 6, cl. 1 ...............................................................ADD-001

    U.S. Const. art. I, § 5, cl. 2 ...............................................................ADD-001

    U.S. Const. art. I, § 5, cl. 3 ...............................................................ADD-001

Rules of the Committee on Ethics, 113th Cong. (2013)

    Rule 24(e) .........................................................................................ADD-004

Rules of the Committee on Standards of Official Conduct, 111th Cong. (2009)

    Rule 1(a) ...........................................................................................ADD-007

    Rule 24(e) .........................................................................................ADD-009

    Rule 25..............................................................................................ADD-010

Rules of the House of Representatives, 111th Cong. (2009)

    Rule I.1.............................................................................................ADD-013

    Rule II.2(c)(4) ...................................................................................ADD-014

    Rule XIII.2(a) ...................................................................................ADD-015

## CONSTITUTIONAL PROVISIONS

A.  The Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1:   "[F]or any Speech or Debate in either House, they [Senators and Representatives] shall not be questioned in any other Place."

B.  The Discipline Clause, U.S. Const. art. I, § 5, cl. 2:  "Each House may . . . punish its Members for disorderly Behaviour, and, with the Concurrence of two thirds, expel a Member."

C.  The Journal Clause, U.S. Const. art. I, § 5, cl. 3:  "Each House shall keep a Journal of its Proceedings, and from time to time publish the same, excepting such Parts as may in their Judgment require Secrecy; and the Yeas and Nays of the Members of either House on any question shall, at the Desire of one fifth of those Present, be entered on the Journal."

# RULES

## COMMITTEE ON ETHICS

Adopted February 5, 2013
**113th Congress**

U.S. HOUSE OF REPRESENTATIVES
WASHINGTON, D.C. 20515

i

affirmation shall be administered by the Chair or Committee member designated by the Chair to administer oaths.

(o)  At an adjudicatory hearing, the burden of proof rests on Committee counsel to establish the facts alleged in the Statement of Alleged Violation by clear and convincing evidence.  However, Committee counsel need not present any evidence regarding any count that is admitted by the respondent or any fact stipulated.     Committee counsel or respondent's counsel may move the adjudicatory subcommittee to make a finding that there is no material fact at issue.  If the adjudicatory subcommittee finds that there is no material fact at issue, the burden of proof will be deemed satisfied.

(p)  As soon as practicable after all testimony and evidence have been presented, the subcommittee shall consider each count contained in the Statement of Alleged Violation and shall determine by a majority vote of its members whether each count has been proved. If a majority of the subcommittee does not vote that a count has been proved, a motion to reconsider that vote may be made only by a member who voted that the count was not proved.  A count that is not proved shall be considered as dismissed by the subcommittee.

(q)  The findings of the adjudicatory subcommittee shall be reported to the Committee.

### Rule 24.  Sanction Hearing and Consideration of Sanctions
### or Other Recommendations

(a)  If no count in a Statement of Alleged Violation is proved, the Committee shall prepare a report to the House of Representatives, based upon the report of the adjudicatory subcommittee.

**ADD-003**

(b)  If an adjudicatory subcommittee completes an adjudicatory hearing pursuant to Rule 23 and reports that any count of the Statement of Alleged Violation has been proved, a hearing before the Committee shall be held to receive oral and/or written submissions by counsel for the Committee and counsel for the respondent as to the sanction the Committee should recommend to the House of Representatives with respect to such violations.  Testimony by witnesses shall not be heard except by written request and vote of a majority of the Committee.

(c)  Upon completion of any proceeding held pursuant to clause (b), the Committee shall consider and vote on a motion to recommend to the House of Representatives that the House take disciplinary action.  If a majority of the Committee does not vote in favor of the recommendation that the House of Representatives take action, a motion to reconsider that vote may be made only by a member who voted against the recommendation.  The Committee may also, by majority vote, adopt a motion to issue a Letter of Reproval or take other appropriate Committee action.

(d)  If the Committee determines a Letter of Reproval constitutes sufficient action, the Committee shall include any such letter as a part of its report to the House of Representatives.

(e)  With respect to any proved counts against a Member of the House of Representatives, the Committee may recommend to the House one or more of the following sanctions:

(1)  Expulsion from the House of Representatives.

(2)  Censure.

(3)  Reprimand.

(4)  Fine.

43

**ADD-004**

(5) Denial or limitation of any right, power, privilege, or immunity of the Member if under the Constitution the House of Representatives may impose such denial or limitation.

(6) Any other sanction determined by the Committee to be appropriate.

(f)  With respect to any proved counts against an officer or employee of the House of Representatives, the Committee may recommend to the House one or more of the following sanctions:

(1) Dismissal from employment.

(2) Reprimand.

(3) Fine.

(4) Any other sanction determined by the Committee to be appropriate.

(g)  With respect to the sanctions that the Committee may recommend, reprimand is appropriate for serious violations, censure is appropriate for more serious violations, and expulsion of a Member or dismissal of an officer or employee is appropriate for the most serious violations.  A recommendation of a fine is appropriate in a case in which it is likely that the violation was committed to secure a personal financial benefit; and a recommendation of a denial or limitation of a right, power, privilege, or immunity of a Member is appropriate when the violation bears upon the exercise or holding of such right, power, privilege, or immunity.  This clause sets forth general guidelines and does not limit the authority of the Committee to recommend other sanctions.

(h)  The Committee report shall contain an appropriate statement of the evidence supporting the Committee's findings and a statement of the Committee's reasons for the recommended sanction.

# RULES

## COMMITTEE ON STANDARDS
## OF OFFICIAL CONDUCT

Adopted February 10, 2009
Amended June 9, 2009
**111th Congress**

## U.S. HOUSE OF REPRESENTATIVES
## WASHINGTON, D.C. 20515

**ADD-006**

## FOREWORD

The Committee on Standards of Official Conduct is unique in the House of Representatives.  Consistent with the duty to carry out its advisory and enforcement responsibilities in an impartial manner, the Committee is the only standing committee of the House of Representatives the membership of which is divided evenly by party.  These rules are intended to provide a fair procedural framework for the conduct of the Committee's activities and to help ensure that the Committee serves well the people of the United States, the House of Representatives, and the Members, officers, and employees of the House of Representatives.

## PART I—GENERAL COMMITTEE RULES

### *Rule 1.  General Provisions*

(a)  So far as applicable, these rules and the Rules of the House of Representatives shall be the rules of the Committee and any subcommittee.  The Committee adopts these rules under the authority of clause 2(a)(1) of Rule XI of the Rules of the House of Representatives, 111th Congress.

(b)  The rules of the Committee may be modified, amended, or repealed by a vote of a majority of the Committee.

(c)  When the interests of justice so require, the Committee, by a majority vote of its members, may adopt any special procedures, not inconsistent with these rules, deemed necessary to resolve a particular matter before it.  Copies of such special procedures shall be furnished to all parties in the matter.

(d) The Chair and Ranking Minority Member shall have access to such information that they request as necessary to conduct Committee business.

majority of the subcommittee does not vote that a count has been proved, a motion to reconsider that vote may be made only by a member who voted that the count was not proved.  A count that is not proved shall be considered as dismissed by the subcommittee.

(p)  The findings of the adjudicatory subcommittee shall be reported to the Committee.

### Rule 24.  Sanction Hearing and Consideration of Sanctions
### or Other Recommendations

(a)  If no count in a Statement of Alleged Violation is proved, the Committee shall prepare a report to the House of Representatives, based upon the report of the adjudicatory subcommittee.

(b)  If an adjudicatory subcommittee completes an adjudicatory hearing pursuant to Rule 23 and reports that any count of the Statement of Alleged Violation has been proved, a hearing before the Committee shall be held to receive oral and/or written submissions by counsel for the Committee and counsel for the respondent as to the sanction the Committee should recommend to the House of Representatives with respect to such violations. Testimony by witnesses shall not be heard except by written request and vote of a majority of the Committee.

(c)  Upon completion of any proceeding held pursuant to clause (b), the Committee shall consider and vote on a motion to recommend to the House of Representatives that the House take disciplinary action.  If a majority of the Committee does not vote in favor of the recommendation that the House of Representatives take action, a motion to reconsider that vote may be made only by a member who voted against the recommendation.  The

42

**ADD-008**

Committee may also, by majority vote, adopt a motion to issue a Letter of Reproval or take other appropriate Committee action.

(d)  If the Committee determines a Letter of Reproval constitutes sufficient action, the Committee shall include any such letter as a part of its report to the House of Representatives.

(e)  With respect to any proved counts against a Member of the House of Representatives, the Committee may recommend to the House one or more of the following sanctions:

(1)  Expulsion from the House of Representatives.

(2)  Censure.

(3)  Reprimand.

(4)  Fine.

(5)  Denial or limitation of any right, power, privilege, or immunity of the Member if under the Constitution the House of Representatives may impose such denial or limitation.

(6)  Any other sanction determined by the Committee to be appropriate.

(f)  With respect to any proved counts against an officer or employee of the House of Representatives, the Committee may recommend to the House one or more of the following sanctions:

(1)  Dismissal from employment.

(2)  Reprimand.

(3)  Fine.

(4)  Any other sanction determined by the Committee to be appropriate.

43

**ADD-009**

(g)  With respect to the sanctions that the Committee may recommend, reprimand is appropriate for serious violations, censure is appropriate for more serious violations, and expulsion of a Member or dismissal of an officer or employee is appropriate for the most serious violations.  A recommendation of a fine is appropriate in a case in which it is likely that the violation was committed to secure a personal financial benefit; and a recommendation of a denial or limitation of a right, power, privilege, or immunity of a Member is appropriate when the violation bears upon the exercise or holding of such right, power, privilege, or immunity.  This clause sets forth general guidelines and does not limit the authority of the Committee to recommend other sanctions.

(h)  The Committee report shall contain an appropriate statement of the evidence supporting the Committee's findings and a statement of the Committee's reasons for the recommended sanction.

### *Rule 25. Disclosure of Exculpatory Information to Respondent*

If the Committee, or any investigative or adjudicatory subcommittee at any time receives any exculpatory information respecting a Complaint or Statement of Alleged Violation concerning a Member, officer, or employee of the House of Representatives, it shall make such information known and available to the Member, officer, or employee as soon as practicable, but in no event later than the transmittal of evidence supporting a proposed Statement of Alleged Violation pursuant to Rule 26(c).  If an investigative subcommittee does not adopt a Statement of Alleged Violation, it shall identify any exculpatory information in its possession at the conclusion of its inquiry and shall include such information, if any, in the subcommittee's final report to the Committee regarding its inquiry.  For purposes of this rule, exculpatory evidence shall be any evidence or information

44

**ADD-010**

that is substantially favorable to the respondent with respect to the allegations or charges before an investigative or adjudicatory subcommittee.

### Rule 26. Rights of Respondents and Witnesses

(a)  A respondent shall be informed of the right to be represented by counsel, to be provided at the respondent's own expense.

(b)  A respondent may seek to waive any procedural rights or steps in the disciplinary process.  A request for waiver must be in writing, signed by the respondent, and must detail what procedural steps the respondent seeks to waive.  Any such request shall be subject to the acceptance of the Committee or subcommittee, as appropriate.

(c)  Not less than 10 calendar days before a scheduled vote by an investigative subcommittee on a Statement of Alleged Violation, the subcommittee shall provide the respondent with a copy of the Statement of Alleged Violation it intends to adopt together with all evidence it intends to use to prove those charges which it intends to adopt, including documentary evidence, witness testimony, memoranda of witness interviews, and physical evidence, unless the subcommittee by an affirmative vote of a majority of its members decides to withhold certain evidence in order to protect a witness, but if such evidence is withheld, the subcommittee shall inform the respondent that evidence is being withheld and of the count to which such evidence relates.

(d)  Neither the respondent nor respondent's counsel shall, directly or indirectly, contact the subcommittee or any member thereof during the period of time set forth in paragraph (c) except for the sole purpose of settlement discussions where counsels for the respondent and the subcommittee are present.

**ADD-011**

# RULES

*of the*

# HOUSE OF REPRESENTATIVES

————

ONE HUNDRED ELEVENTH CONGRESS

————



PREPARED BY

Lorraine C. Miller

Clerk of the House of Representatives

JUNE 16, 2009

(Rev. 6–16–09)

# RULES OF THE HOUSE OF REPRESENTATIVES

————

## ONE HUNDRED ELEVENTH CONGRESS

### RULE I

#### THE SPEAKER

*Approval of the Journal*

1. The Speaker shall take the Chair on every legislative day precisely at the hour to which the House last adjourned and immediately call the House to order. Having examined and approved the Journal of the last day's proceedings, the Speaker shall announce to the House approval thereof. The Speaker's approval of the Journal shall be deemed agreed to unless a Member, Delegate, or Resident Commissioner demands a vote thereon. If such a vote is decided in the affirmative, it shall not be subject to a motion to reconsider. If such a vote is decided in the negative, then one motion that the Journal be read shall be privileged, shall be decided without debate, and shall not be subject to a motion to reconsider.

*Preservation of order*

2. The Speaker shall preserve order and decorum and, in case of disturbance or disorderly conduct in the galleries or in the lobby, may cause the same to be cleared.

*Control of Capitol facilities*

3. Except as otherwise provided by rule or law, the Speaker shall have general control of the Hall of the House, the corridors and passages in the part of the Capitol assigned to the use of the House, and the disposal of unappropriated rooms in that part of the Capitol.

*Signature of documents*

4. The Speaker shall sign all acts and joint resolutions passed by the two Houses and all writs, warrants, and subpoenas of, or issued by order of, the House. The Speaker may sign enrolled bills and joint resolutions whether or not the House is in session.

*Questions of order*

5. The Speaker shall decide all questions of order, subject to appeal by a Member, Delegate, or Resident Commissioner. On such an appeal a Member, Delegate, or Resident Commissioner may not speak more than once without permission of the House.

*Form of a question*

6. The Speaker shall rise to put a question but may state it sitting. The Speaker shall put a question in this form: "Those in favor (of the question), say 'Aye.'"; and after the affirmative voice is expressed, "Those opposed, say 'No.'". After a vote by voice under this clause, the Speaker may use such voting procedures as may be invoked under rule XX.

*Discretion to vote*

7. The Speaker is not required to vote in ordinary legislative proceedings, except when such vote would be decisive or when the House is engaged in voting by ballot.

*Speaker pro tempore*

8. (a) The Speaker may appoint a Member to perform the duties of the Chair. Except as specified in paragraph (b), such an appointment may not extend beyond three legislative days.

(b)(1) In the case of illness, the Speaker may appoint a Member to perform the duties of the Chair for a period not exceeding 10 days, subject to the approval of the House. If the Speaker is absent and has omitted to make such an appointment, then the House shall elect a Speaker pro tempore to act during the absence of the Speaker.

(2) With the approval of the House, the Speaker may appoint a Member to act as Speaker pro tempore only to sign enrolled bills and joint resolutions for a specified period of time.

(3)(A) In the case of a vacancy in the office of Speaker, the next Member on the list described in subdivision (B) shall act as Speaker pro tempore until the election of a Speaker or a Speaker pro tempore. Pending such election the Member acting as Speaker pro tempore may exercise such authorities of the Office of Speaker as may be necessary and appropriate to that end.

(B) As soon as practicable after the election of the Speaker and whenever appropriate thereafter, the Speaker shall deliver to the Clerk a list of Members in the order in which each shall act as Speaker pro tempore under subdivision (A).

(C) For purposes of subdivision (A), a vacancy in the office of Speaker may exist by reason of the physical inability of the Speaker to discharge the duties of the office.

*Other responsibilities*

9. The Speaker, in consultation with the Minority Leader, shall develop through an appropriate entity of the House a system for drug testing in the House. The system may provide for the testing of a Member, Delegate, Resident Commissioner, officer, or employee of the House, and otherwise shall be comparable in scope to the system for drug testing in the executive branch pursuant to Executive Order 12564 (Sept. 15, 1986). The expenses of the system may be paid from applicable accounts of the House for official expenses.

*Designation of travel*

10. The Speaker may designate a Member, Delegate, Resident Commissioner, officer, or employee of the House to travel on the business of the House within or without the United States, whether the House is meeting, has recessed, or has adjourned. Expenses for such travel may be paid from applicable accounts of the House described in clause 1(j)(1) of rule X on vouchers approved and signed solely by the Speaker.

*Committee appointment*

11. The Speaker shall appoint all select, joint, and conference committees ordered by the House. At any time after an original appointment, the Speaker may remove Members, Delegates, or the Resident Commissioner from, or appoint additional Members, Delegates, or the Resident Commissioner to, a select or conference committee. In appointing Members, Delegates, or the Resident Commissioner to conference committees, the Speaker shall appoint no less than a majority who generally supported the House position as determined by the Speaker, shall name those who are primarily responsible for the legislation, and shall, to the fullest extent feasible, include the principal proponents of the major provisions of the bill or resolution passed or adopted by the House.

*Recess and convening authorities*

12. (a) To suspend the business of the House for a short time when no question is pending before the House, the Speaker may declare a recess subject to the call of the Chair.

(b)(1) To suspend the business of the House when notified of an imminent threat to its safety, the Speaker may declare an emergency recess subject to the call of the Chair.

(2) To suspend the business of the Committee of the Whole House on the state of the Union when notified of an imminent threat to its safety, the Chair of the Committee of the Whole may declare an emergency recess subject to the call of the Chair.

(c) During any recess or adjournment of not more than three days, if the Speaker is notified by the Sergeant-at-Arms of an imminent impairment of the place of reconvening at the time previously appointed, then the Speaker

**ADD-013**

2            RULES OF THE

may, in consultation with the Minority Leader—

(1) postpone the time for reconvening within the limits of clause 4, section 5, article I of the Constitution and notify Members accordingly; or

(2) reconvene the House before the time previously appointed solely to declare the House in recess within the limits of clause 4, section 5, article I of the Constitution and notify Members accordingly.

(d) The Speaker may convene the House in a place at the seat of government other than the Hall of the House whenever, in the opinion of the Speaker, the public interest shall warrant it.

RULE II

OTHER OFFICERS AND OFFICIALS

*Elections*

1. There shall be elected at the commencement of each Congress, to continue in office until their successors are chosen and qualified, a Clerk, a Sergeant-at-Arms, a Chief Administrative Officer, and a Chaplain. Each of these officers shall take an oath to support the Constitution of the United States, and for the true and faithful exercise of the duties of the office to the best of the knowledge and ability of the officer, and to keep the secrets of the House. Each of these officers shall appoint all of the employees of the department concerned provided for by law. The Clerk, Sergeant-at-Arms, and Chief Administrative Officer may be removed by the House or by the Speaker.

*Clerk*

2. (a) At the commencement of the first session of each Congress, the Clerk shall call the Members, Delegates, and Resident Commissioner to order and proceed to record their presence by States in alphabetical order, either by call of the roll or by use of the electronic voting system. Pending the election of a Speaker or Speaker pro tempore, the Clerk shall preserve order and decorum and decide all questions of order, subject to appeal by a Member, Delegate, or Resident Commissioner.

(b) At the commencement of every regular session of Congress, the Clerk shall make and cause to be delivered to each Member, Delegate, and the Resident Commissioner a list of the reports that any officer or Department is required to make to Congress, citing the law or resolution in which the requirement may be contained and placing under the name of each officer the list of reports required to be made by such officer.

(c) The Clerk shall—

(1) note all questions of order, with the decisions thereon, the record of which shall be appended to the Journal of each session;

(2) enter on the Journal the hour at which the House adjourns;

(3) complete the distribution of the Journal to Members, Delegates, and the Resident Commissioner, together with an accurate and complete index, as soon as possible after the close of a session; and

(4) send a copy of the Journal to the executive of and to each branch of the legislature of every State as may be requested by such State officials.

(d)(1) The Clerk shall attest and affix the seal of the House to all writs, warrants, and subpoenas issued by order of the House and certify the passage of all bills and joint resolutions.

(2) The Clerk shall examine all bills, amendments, and joint resolutions after passage by the House and, in cooperation with the Senate, examine all bills and joint resolutions that have passed both Houses to see that they are correctly enrolled and forthwith present those bills and joint resolutions that originated in the House to the President in person after their signature by the Speaker and the President of the Senate, and report to the House the fact and date of their presentment.

(e) The Clerk shall cause the calendars of the House to be distributed each legislative day.

(f) The Clerk shall—

(1) retain in the library at the Office of the Clerk for the use of the Members, Delegates, Resident Commissioner, and officers of the House, and not to be withdrawn therefrom, two copies of all the books and printed documents deposited there; and

(2) deliver to any Member, Delegate, or the Resident Commissioner an extra copy of each document requested by that Member, Delegate, or Resident Commissioner that has been printed by order of either House of Congress in any Congress in which the Member, Delegate, or Resident Commissioner served.

(g) The Clerk shall provide for the temporary absence or disability of the Clerk by designating an official in the Office of the Clerk to sign all papers that may require the official signature of the Clerk and to perform all other official acts that the Clerk may be required to perform under the rules and practices of the House, except such official acts as are provided for by statute. Official acts performed by the designated official shall be under the name of the Clerk. The designation shall be in writing and shall be laid before the House and entered on the Journal.

(h) The Clerk may receive messages from the President and from the Senate at any time when the House is in recess or adjournment.

(i)(1) The Clerk shall supervise the staff and manage the office of a Member, Delegate, or Resident Commissioner who has died, resigned, or been expelled until a successor is elected. The Clerk shall perform similar duties in the event that a vacancy is declared by the House in any congressional district because of the incapacity of the person representing such district or other reason. When acting as a supervisory authority over such staff, the Clerk shall have authority to terminate employees and, with the approval of the Committee on House Administration, may appoint such staff as is required to operate the office until a successor is elected.

(2) For 60 days following the death of a former Speaker, the Clerk shall maintain on the House payroll, and shall supervise in the same manner, staff appointed under House Resolution 1238, Ninety-first Congress (as enacted into permanent law by chapter VIII of the Supplemental Appropriations Act, 1971) (2 U.S.C. 31b–5).

(j) In addition to any other reports required by the Speaker or the Committee on House Administration, the Clerk shall report to the Committee on House Administration not later than 45 days following the close of each semiannual period ending on June 30 or on December 31 on the financial and operational status of each function under the jurisdiction of the Clerk. Each report shall include financial statements and a description or explanation of current operations, the implementation of new policies and procedures, and future plans for each function.

(k) The Clerk shall fully cooperate with the appropriate offices and persons in the performance of reviews and audits of financial records and administrative operations.

*Sergeant-at-Arms*

3. (a) The Sergeant-at-Arms shall attend the House during its sittings and maintain order under the direction of the Speaker or other presiding officer. The Sergeant-at-Arms shall execute the commands of the House, and all processes issued by authority thereof, directed to the Sergeant-at-Arms by the Speaker.

(b) The symbol of the office of the Sergeant-at-Arms shall be the mace, which shall be borne by the Sergeant-at-Arms while enforcing order on the floor.

(c) The Sergeant-at-Arms shall enforce strictly the rules relating to the privileges of the Hall of the House and be responsible to the House for the official conduct of employees of the office of the Sergeant-at-Arms.

(d) The Sergeant-at-Arms may not allow a person to enter the room over the Hall of the House during its sittings and, from 15 minutes before the hour of the meeting of the House each day until 10 minutes after adjournment, shall see that the floor is cleared of all persons except those privileged to remain.

(e) In addition to any other reports required by the Speaker or the Committee on House Administration, the Sergeant-at-Arms shall report to the Committee on House Administration not later than 45 days following the close of each semiannual period ending on June 30 or on December 31 on the financial and operational status of each function under the jurisdiction of the

**ADD-014**

## HOUSE OF REPRESENTATIVES 25

petition, memorial, or private bill (except when judged by the Speaker to be obscene or insulting) shall be entered on the Journal with the name of the Member, Delegate, or Resident Commissioner presenting it and shall be printed in the Congressional Record.

4. A private bill or private resolution (including an omnibus claim or pension bill), or amendment thereto, may not be received or considered in the House if it authorizes or directs—

(a) the payment of money for property damages, for personal injuries or death for which suit may be instituted under the Tort Claims Procedure provided in title 28, United States Code, or for a pension (other than to carry out a provision of law or treaty stipulation);

(b) the construction of a bridge across a navigable stream; or

(c) the correction of a military or naval record.

*Prohibition on commemorations*

5. (a) A bill or resolution, or an amendment thereto, may not be introduced or considered in the House if it establishes or expresses a commemoration.

(b) In this clause the term ''commemoration'' means a remembrance, celebration, or recognition for any purpose through the designation of a specified period of time.

*Excluded matters*

6. A petition, memorial, bill, or resolution excluded under this rule shall be returned to the Member, Delegate, or Resident Commissioner from whom it was received. A petition or private bill that has been inappropriately referred may, by direction of the committee having possession of it, be properly referred in the manner originally presented. An erroneous reference of a petition or private bill under this clause does not confer jurisdiction on a committee to consider or report it.

*Sponsorship*

7. (a) Bills, memorials, petitions, and resolutions, endorsed with the names of Members, Delegates, or the Resident Commissioner introducing them, may be delivered to the Speaker to be referred. The titles and references of all bills, memorials, petitions, resolutions, and other documents referred under this rule shall be entered on the Journal and printed in the Congressional Record. An erroneous reference may be corrected by the House in accordance with rule X on any day immediately after the Pledge of Allegiance to the Flag by unanimous consent or motion. Such a motion shall be privileged if offered by direction of a committee to which the bill has been erroneously referred or by direction of a committee claiming jurisdiction and shall be decided without debate.

(b)(1) The primary sponsor of a public bill or public resolution may name cosponsors. The name of a cosponsor added after the initial printing of a bill or resolution shall appear in the next printing of the bill or resolution on the written request of the primary sponsor. Such a request may be submitted to the Speaker at any time until the last committee authorized to consider and report the bill or resolution reports it to the House or is discharged from its consideration.

(2) The name of a cosponsor of a bill or resolution may be deleted by unanimous consent. The Speaker may entertain such a request only by the Member, Delegate, or Resident Commissioner whose name is to be deleted or by the primary sponsor of the bill or resolution, and only until the last committee authorized to consider and report the bill or resolution reports it to the House or is discharged from its consideration. The Speaker may not entertain a request to delete the name of the primary sponsor of a bill or resolution. A deletion shall be indicated by date in the next printing of the bill or resolution.

(3) The addition or deletion of the name of a cosponsor of a bill or resolution shall be entered on the Journal and printed in the Congressional Record of that day.

(4) A bill or resolution shall be reprinted on the written request of the primary sponsor. Such a request may be submitted to the Speaker only when 20 or more cosponsors have been added since the last printing of the bill or resolution.

(5) When a bill or resolution is introduced ''by request,'' those words shall be entered on the Journal and printed in the Congressional Record.

*Executive communications*

8. Estimates of appropriations and all other communications from the executive departments intended for the consideration of any committees of the House shall be addressed to the Speaker for referral as provided in clause 2 of rule XIV.

RULE XIII

CALENDARS AND COMMITTEE REPORTS

*Calendars*

1. (a) All business reported by committees shall be referred to one of the following three calendars:

(1) A Calendar of the Committee of the Whole House on the state of the Union, to which shall be referred public bills and public resolutions raising revenue, involving a tax or charge on the people, directly or indirectly making appropriations of money or property or requiring such appropriations to be made, authorizing payments out of appropriations already made, releasing any liability to the United States for money or property, or referring a claim to the Court of Claims.

(2) A House Calendar, to which shall be referred all public bills and public resolutions not requiring referral to the Calendar of the Committee of the Whole House on the state of the Union.

(3) A Private Calendar as provided in clause 5 of rule XV, to which shall be referred all private bills and private resolutions.

(b) There is established a Calendar of Motions to Discharge Committees as provided in clause 2 of rule XV.

*Filing and printing of reports*

2. (a)(1) Except as provided in subparagraph (2), all reports of committees (other than those filed from the floor) shall be delivered to the Clerk for printing and reference to the proper calendar under the direction of the Speaker in accordance with clause 1. The title or subject of each report shall be entered on the Journal and printed in the Congressional Record.

(2) A bill or resolution reported adversely (other than those filed as privileged) shall be laid on the table unless a committee to which the bill or resolution was referred requests at the time of the report its referral to an appropriate calendar under clause 1 or unless, within three days thereafter, a Member, Delegate, or Resident Commissioner makes such a request.

(b)(1) It shall be the duty of the chair of each committee to report or cause to be reported promptly to the House a measure or matter approved by the committee and to take or cause to be taken steps necessary to bring the measure or matter to a vote.

(2) In any event, the report of a committee on a measure that has been approved by the committee shall be filed within seven calendar days (exclusive of days on which the House is not in session) after the day on which a written request for the filing of the report, signed by a majority of the members of the committee, has been filed with the clerk of the committee. The clerk of the committee shall immediately notify the chair of the filing of such a request. This subparagraph does not apply to a report of the Committee on Rules with respect to a rule, joint rule, or order of business of the House, or to the reporting of a resolution of inquiry addressed to the head of an executive department.

(c) All supplemental, minority, or additional views filed under clause 2(l) of rule XI by one or more members of a committee shall be included in, and shall be a part of, the report filed by the committee with respect to a measure or matter. When time guaranteed by clause 2(l) of rule XI has expired (or, if sooner, when all separate views have been received), the committee may arrange to file its report with the Clerk not later than one hour after the expiration of such time. This clause and provisions of clause 2(l) of rule XI do not preclude the immediate filing or printing of a committee report in the absence of a timely request for the opportunity to file supplemental, minority, or additional views as provided in clause 2(l) of rule XI.

*Content of reports*

3. (a)(1) Except as provided in subparagraph (2), the report of a com-

**ADD-015**